This matter is presently before me on a motion by the plaintiff for an interlocutory injunction restraining the defendants from using the trade-mark, name and brands of the plaintiff in connection with the retail sale of gasoline at prices below those fixed by the plaintiff.
The plaintiff, California Oil Company, a Delaware corporation, authorized to do business in New Jersey, is engaged in the production and sale of gasoline. It markets its products under the trade-mark and name of "Calso" and "Calso Supreme." As a result of advertising, these names and brands have acquired a special significance in connection with the products of the plaintiff and are, as a consequence, a valuable part of the good will which plaintiff enjoys.
Defendants, Irving Reingold and Philip Stark, trading as Rein Motors, operate a gasoline service station in the City of Hackensack. At this station defendants sell at retail the gasoline produced by the plaintiff. In doing so these defendants use the trade-mark, name and brands of the plaintiff.
On March 4, 1949, plaintiff, in order to secure for itself the protection afforded by the provisions of the so-called Fair Trade Act, R.S. 56:4-3, 6, executed a contract with Refinery Calso Station, one of the retailers of its products. In the contract, plaintiff fixed the minimum retail selling price for its product sold under the name of "Calso" at 17.1 cents per *Page 527 
gallon and the minimum retail price of its product sold under the name of "Calso Supreme" at 19.1 cents per gallon. These prices were in addition to all state and federal sales and excise taxes. Following the execution of the contract, plaintiff notified all retailers of its products, including these defendants, of the minimum retail prices so fixed. In April, 1949, plaintiff notified all its retailers, including these defendants that thereafter the minimum resale price for "Calso" would be 17.7 cents per gallon and for "Calso Supreme" 19.7 cents per gallon, exclusive of state and federal sales and excise taxes. Defendants failed to charge the prices set by the plaintiff. They sold and still continue to sell plaintiff's products at a price approximately 2.4 cents below the minimum price plaintiff has set. Plaintiff protested and sought to have defendants follow its price list but defendants refused and this litigation ensued.
That the enactment of the Fair Trade Act, R.S. 56:4-3, 6 was within the authority of the Legislature is no longer open to question. Old Dearborn Distributing Co. v. Seagram DistillersCorp., 299 U.S. 183; Johnson Johnson v. Weissbard,121 N.J. Eq. 585. Nor can it be disputed that the plaintiff took the necessary steps to qualify it for the protection afforded by the statute.
Defendants concede that they received notice of plaintiff's minimum price list. But they base their refusal to conform upon three grounds. The first is that the plaintiff consented to the sale of its products at reduced prices. In his answering affidavit Irving Reingold says that in December of 1948, three months before plaintiff fixed its minimum prices, Reingold met with G.S. Cranmer, plaintiff's sales manager and Martin Beck, the distributor from whom defendants obtained their supplies of gasoline. According to Reingold, he told his companions of defendant's intention to sell at reduced prices and they approved. This statement is categorically denied by both Cranmer and Beck. Frankly I don't believe it. Six months prior to the meeting Beck had contracted to supply defendants with gasoline. The contract had several years to run. It is not reasonable that Beck who *Page 528 
had nothing to gain by gratuitous concessions would deliberately invite a price war. Plaintiff was not a party to the contract nor was it consulted about the execution of the contract. At the time of the meeting, plaintiff was preparing to establish minimum prices for the resale of its gasoline. It strains belief to conclude that plaintiff would imperil all its plans for no conceivable benefit.
Reingold also charges that Refinery Calso Station, the retailer with which plaintiff made its price setting contract, is owned by the plaintiff and therefore the contract is a fraud on the statute. The allegation is made upon information and belief. It is supported by no proof other than an affidavit by a ubiquitous fire chief from Hackensack who swore that he accompanied Reingold to the Calso Refinery Station and heard the son of the proprietor say that plaintiff owned the station. Such evidence is not worthy of consideration. And it is interesting to note that the station owner was in court at the time of the argument but was not called upon to substantiate defendant's allegations either by affidavit or oral testimony.
The last charge by Reingold, also upon information and belief, is that the plaintiff, in concert with the major oil producers of the country, is engaged in a conspiracy to restrain trade and fix prices in defiance of the federal anti-trust laws. Defendants charged that all the oil companies had set the same price for the retail sale of gasoline and that such action established a primafacie case of conspiracy. Unfortunately defendants' own proofs refute this allegation. Their own affidavits establish the fact that plaintiff's minimum prices are at least one cent lower than those charged by the other companies. So, whatever other producers may be doing, plaintiff, certainly, on the proofs before me, is not engaged in any conspiracy to restrain trade and fix prices by horizontal agreements with other producers.
Plaintiff's product is in fair and open competition. In setting a minimum price for its resale, plaintiff has complied with all the statutory requirements. It is entitled to protection. An interlocutory injunction will issue. *Page 529