THE GILLETTE COMPANY, A CORPORATION OF DELAWARE, PLAINTIFF-RESPONDENT, AND CROSS-APPELLANT, v. TWO GUYS FROM HARRISON, INC., *ET AL.*, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued October 23, 1961—Decided February 5, 1962.

344

*Mr. Henry F. Wolff, Jr.,* argued the cause for plaintiff-respondent and cross-appellant (*Messrs. Brogan & Wolff,* attorneys).

*Mr. Sam Denstman* argued the cause for defendants-appellants and cross-respondents (*Messrs. Simon, Jaffe & Denstman,* attorneys; *Mr. Murray G. Simon,* of counsel; *Mr. Sam Denstman,* on the brief).

The opinion of the court was delivered by
HANEMAN, J. This appeal involves the "Fair Trade Act," *N. J. S. A.* 56:4–3 *et seq.*

Plaintiff, a Delaware corporation, conducts its business through two unincorporated divisions, Gillette Safety Razor Company (Gillette) and the Toni Company (Toni). Gillette manufactures and wholesales safety razors, razor blades and shaving creams which are resold at retail by drug stores, department stores and similar outlets. Toni manufactures and wholesales various preparations used by women in the care of the hair, which are resold in similar manner.

Vornado, Inc. (Vornado), successor to one of the original defendants, Two Guys from Harrison, Inc. (Two Guys), was joined as a defendant subsequent to the filing of the complaint herein. This successor corporation owns a chain of retail discount stores located in New Jersey and elsewhere in which it does business under the name "Two Guys from Harrison" and in which there are operated retail drug departments. Janice Products, Inc. (Janice), a wholly owned subsidiary of Vornado, operated such drug departments in one of Two Guys' stores located in Totowa and in

other Two Guys' stores throughout New Jersey and continues to so operate under Vornado. Two Guys and Janice sold plaintiff's products at retail until succeeded in operation by Vornado.

Plaintiff filed suit alleging that Two Guys and Janice were selling Gillette and Toni products in New Jersey below the fair trade prices established under *N. J. S. A.* 56:4–3 *et seq.* Plaintiff sought a two-fold judgment against all three defendants, to wit: (1) an injunction prohibiting the sale of any of its fair traded merchandise below the established fair trade price; (2) damages for past sales by defendants of any of its fair traded merchandise below the established fair trade prices.

The defendants admitted by way of stipulation at pretrial:

(1) "\* \* \* plaintiff's commodities are in free and open competition in this state with commodities manufactured by others of the same general class, in accordance with the requirements of the New Jersey Fair Trade Law. In so stipulating defendants do not in any way waive any attempts to show by way of their affirmative defense pertaining to combination sales or alleged discrimination in refusing to sell directly to defendants, to that extent plaintiff's products are not in fair and open competition with other products."

(2) the existence of a fair trade agreement for plaintiff's products established in accordance with the statute, and (3) the sale by defendants of plaintiff's products below the established fair trade prices.

The issues remaining after pretrial were (1) defendants' claim of unlawful discrimination by reason of plaintiff's refusal to deal directly with them (subsequently abandoned) ; (2) whether there was an abandonment of plaintiff's right to enforce its fair trade price schedule on various individual items by reason of its packaging and offering for resale said items in "tie-in" or "combination" sales; (3) the amount of damages, if any, to which plaintiff is entitled.

After trial, the Chancery Division entered a final judgment which, as far as here pertinent, directed that defendants

"* * * be * * * permanently enjoined and restrained from advertising, offering for sale or selling all products bearing the name or trademarks of the Gillette Company or its divisions the Toni Company and the Gillette Safety Razor Company at prices less than those stipulated for said commodities in the Gillette Company fair trade contracts with retailers and the price lists supplemental thereto at the time in force and effect with such retailers in the State of New Jersey, except that this restraint shall not apply to the following commodities manufactured by plaintiff, namely plaintiff's 3½ oz. size of 'White Rain Shampoo,' 'Pamper,' 'Adorn,' the Gillette Safety Razor Sets, dispenser of 15 Gillette Super Blue Blades, and Gillette Giant Foamy Shaving Cream; * * * and that,

* * * defendants account to the plaintiff for its net profit on sales of plaintiff's commodities for the period from May 1, 1959 to November 19, 1959, with the exception of the commodities enumerated above, which are excluded from the restraint herein; * * *."

Defendants appealed to the Appellate Division from so much of the judgment as required them to account to plaintiff for their net profits on sales of items other than those excepted in the final judgment. Defendants do not dispute a violation of the Fair Trade Act insofar as these items are concerned. Plaintiff cross-appealed from so much of said judgment as excepted the stated items from an injunction and accounting. This court certified the appeal on its own motion before argument in the Appellate Division. We shall first consider plaintiff's cross-appeal.

The trial court denied the protection of the Fair Trade Act to the enumerated items which were individually fair traded for the reason that they were subsequently included in "tie in" or "combination" packages also fair traded. The combination packages are as follows:

(1) A package consisting of two 3½ ounce bottles of "White Rain Shampoo" fair traded at 98¢ for the period of March 30, 1959 to September 30, 1959. During this period a single 3½ ounce bottle was fair traded at 60¢;

(2) A package consisting of a combination of one 3½ ounce bottle of "Pink Pamper Shampoo" and an empty plastic container bottle, fair traded at 60¢ for the period of July 1, 1958 to October 31, 1958. During this same period a single 3½ ounce bottle without the additional plastic

container bottle was fair traded at 60¢. The container bottle was not fair traded;

(3) Two packages consisting respectively of one 7 ounce bottle and one 15¼ ounce bottle of "Adorn Hair Spray" together with four brush rollers and a styling booklet in each package, the former fair traded at $1.50 and the latter at $2.25, for the period of March 15, 1960 to September 30, 1960. During this period the bottles were fair traded without the rollers and booklet at the same prices. Toni did not, during the foregoing period, sell either the rollers or the booklet separately but now sells a package of 4 rollers at a suggested retail price of 59¢ although they are not fair traded.

(4) A package consisting of one tube of "Gillette Giant Foamy Shaving Cream" and one dispenser of 15 "Gillette Super Blue Blades" fair traded at $1.50 for the period of January 6, 1961 to March 31, 1961. This combination was included by consent of parties subsequent to trial but prior to judgment. During this time the shaving cream was fair traded at 98¢ and the dispenser at $1.00.

An additional combination consisting of a razor set is also involved but since it presents problems different from those raised by the above packages discussion on that point will be reserved until later in this opinion.

Defendants do not challenge the right of a producer to establish a fair trade price for a package composed of more than one item except where the package fair trade price is less than the aggregate total fair trade prices established for the individual component items. Such conduct, defendants argue, constitutes a breach of the provisions of *N. J. S. A.* 56:4–3 *et seq.* and an abandonment of the fair trade price on the individual items because those statutes permit a producer to establish only a single fair trade price for each separate *item* of merchandise. Similarly, defendants assert that the establishment of a fair trade price schedule for a package containing at least one individually fair traded item and a non-fair traded

item or items, at a price which reflects no charge for the latter, results in an abandonment of the fair trade price established for the separate items.

To sustain this reasoning defendants point to the employment of the words "commodity" and "price" in *N. J. S. A.* 56:4–5(1)(a) and (b) and *N. J. S. A.* 56:4–6. Those statutory provisions permit the producer of a "commodity" to prohibit its resale by retailers at a "price" lower than that fixed by the producer in its fair trade price schedule. The peculiar use of the quoted words in the singular signifies, defendants assert, a legislative intent to so confine the application of the statutes as to permit the establishment of only one fair trade price for each separate *item*. They rationalize that such an *item* does not lose its separate identity when marketed in combination with other items and hence, whenever a combination package, consisting of two or more items which carry established fair trade prices when resold separately, bears a fair trade price less than the aggregate total of the individual fair trade prices the result is that the individual fair trade prices on the separate items are thereby diluted or diminished. (Combinations (1) and (4) above.) The same effect is attributed to combinations consisting of items fair traded individually together with a non-fair traded item or items for which no extra charge is made. (Combinations (2) and (3) above.) On these bases is predicated the contention that such a course of conduct constitutes an abandonment of the producer's fair trade price schedule on the individual items, there being, in effect, two separate fair trade prices on the component items, a practice, it is alleged, not permitted by the statutes. Reliance for this position is also placed on the decisions in *Magazine Repeating Razor Co. v. Weissbard,* 125 *N. J. Eq.* 593 (*Ch.* 1939); *Bathasweet Corp. v. Weissbard,* 128 *N. J. Eq.* 135 (*Ch.* 1940), and *Frank Fischer Merchandising Corp. v. Rilz Drug Co.,* 129 *N. J. Eq.* 105 (*Ch.* 1941).

Plaintiff, on the other hand, disputes defendants' construction of these statutes and denies that its criticized conduct dilutes the fair trade price of the component items. It asserts that the above combination packages were offered, and similar packages are offered, as a promotional technique for a limited time with the right in the retailer to return the unsold packages at the expiration thereof. This practice, rather than redounding to the detriment of retailers by a price dilution, stimulates sales of the component items at their individually established prices and redounds to their financial benefit.

■ The fallacy in defendant's construction of the statute is found in the very language thereof. *N. J. S. A.* 56:4–5 permits the establishment of a fair trade price for a "commodity." *N. J. S. A.* 56:4–3 defines "commodity" as "any subject of commerce." The statute does not restrict the permitted course of conduct to an *"item"* of merchandise. A package containing more than one item sold by a producer may as well be a subject of commerce as a single item or article. It is the nature of the package rather than of its components which determines whether it is a commodity in fair and open competition. *Eastman Kodak Company v. Siegel,* 2 *Misc.* 2d 966, 150 *N. Y. S.* 2d 99 (*Sup. Ct., Sp. Term* 1956), modified 1 *A. D.* 2d 1002, 151 *N. Y. S.* 2d 859 (*App. Div.* 1956); *Eastman Kodak Company v. Home Utilities Company,* 234 *F.* 2d 766 (4 *Cir.* 1956), *certiorari* dismissed 352 *U. S.* 956, 77 *S. Ct.* 349, 1 *L. Ed.* 2d 363 (1957); *Colgate-Palmolive Co. v. Hogue & Knott Super Market* [1955 Trade Cases ¶ 67,989] (*W. D. Tenn.* 1955).

■ But this conclusion does not dispose of the problem before us. A producer may not market, in combination, fair traded articles or even articles fair traded with articles not fair traded if the marketing is done in such fashion as to subvert the principles of fair trade legislation. In utilizing such marketing techniques the interests of the public and retailers must be recognized; otherwise, they would be at the mercy of a producer who could with impunity devise com-

bination price schemes which could seriously hamper the retailers' sale of the single item already on sale at an established fair trade price.

It is evident from the rationale of *Magazine Repeating Razor Co., Bathasweet* and *Frank Fischer Merchandising Corp., supra,* that the Chancery Court was moved in part to its final conclusion by the fear that conduct comparable to that here present could result in damage to the retailer as well as to the consuming public. The evil which was so anticipated lay in the danger that a retailer would be left with unsold individually fair traded items upon his shelves unless he concealed from the purchasing public the availability of a competitive combination including such individual item at a reduced price.

It is conceivable, also, that such an offer unlimited as to time and returnability of the combination, or frequent in recurrence, could redound to the detriment of a retailer not only for the above detailed reasons but also due to the possibility that it might furnish to a more financially sound retailer an opportunity to stock sufficient of the combination packages so as to unfairly compete with the less financially sound retailer. The latter might then be left with only individual items upon his shelves, which would be unsaleable in the face of the continued offering of the combination by his more affluent competitor at a lower per item price.

It may be that a combination could be used without loss of the fair trade price on individual items if the producer employed a program whereby the retailers holding such individual items would plainly be protected against all economic loss with respect to them. No such program here existed and hence we need not explore that question. We must conclude that in the present case the fair traded price of the individual items was abandoned.

A somewhat different category is presented by a fifth combination package, reserved earlier in this opinion for separate discussion. Gillette marketed three types of packaged razor sets, each consisting of a case, razor and six blade dis-

penser fair traded without time limit at prices respectively
of 49¢, $1.00 and $5.00, depending upon the type razor
included. The razors were not separately fair traded at the
time of trial but were thereafter fair traded beginning Jan-
uary 1, 1961. The blades, however, were at all times fair
traded at 5¢ each. Defendants in some instances broke up
the combinations and sold the razors, at a price determined
by them, separate from the blades although the fair trade
price established for the blades was adhered to.

■ Plaintiff objects to the breaking up of the combina-
tion and the individual sale of the non-fair traded items at
a price set by the retailer. There appears no logical reason
to prevent a retailer from breaking up a fair traded package
consisting of fair traded and non-fair traded items and sell-
ing the non-fair traded components at whatever price he may
set, provided the sale of the individually fair traded articles
is at their separately established prices. In the light of the
fact that defendants sold the fair traded items at their
established prices, plaintiff is not entitled to the relief sought.

■ There remains the question of damages for the sale
of those items admittedly sold in violation of the Fair
Trade Act. Defendants argue that plaintiff failed to prove
that it had sustained actual pecuniary damages as a result
of the breach of the established fair trade price schedule
and that absent such proof plaintiff was not entitled to
any damages. They say an award of an accounting would
in such case constitute punitive rather than compensatory
relief. *Sunbeam Corp. v. Civil Service Employees Co-op.
Ass'n*, 187 *F*. 2d 768 (3 *Cir*. 1951), reversed on other
grounds 192 *F*. 2d 572 (3 *Cir*. 1951).

We think a suitable analogue may be found in an action
for recovery of damages for violation of patent infringe-
ment. The relief is there based upon the pecuniary injury
or damage caused the complaining party. The court con-
verts the infringer into a trustee for the patentee as regards
the profits thus made and requires an accounting thereof.
The award is the equivalent or substitute for legal damages,

a compensation computed and measured by the same rules that apply to a trustee who has wrongfully used trust property for his own advantage. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 *U. S.* 448, 52 *S. Ct.* 238, 76 *L. Ed.* 389 (1932).

In *Sunbeam Corporation v. Golden Rule Appliance Co.*, 252 *F.* 2d 467 (2 *Cir.* 1957), the court said, at *p.* 470:

"However, it now seems established that in trade-mark cases, in which as in Fair Trade cases the plaintiff has suffered injury to his good will, the infringer, like the patent infringer, is held to the accountability of a trustee for profits derived from property illegally dealt with, Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F. 2d 354, 362–363; Maternally Yours, Inc. v. Your Maternity Shop, 2 Cir., 234 F. 2d 538, 545; Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 193 F. 2d 77. In both types of cases the crucial injury is the one to the plaintiff's good will; in both the plaintiff may recover the defendant's profits. I think that in the one type as in the other the recovery may be classified as compensatory, rather than punitive, within the meaning of the federal rule limiting awards in civil contempt cases to those which are compensatory. An award in such cases surely cannot be characterized as 'punitive.' For its effect goes no further than to give to the plaintiff the profits derived by the defendant's wrongful conduct: it does not take from the defendant assets not related to its wrongful conduct. As noted in the Blue Bell Co. case, supra, such recovery rests 'upon the equitable principle of unjust enrichment' which is the antithesis of punishment. Restatement, Restitution, § 1."

We agree with the above statement in *Sunbeam Corporation v. Golden Rule Appliance Co.*, supra, and disagree with *Sunbeam Corporation v. Civil Service Employees Co-op. Ass'n.*, supra. The trial judge correctly required defendants to account for their profits without specific proof of plaintiff's actual pecuniary damage.

The judgment is affirmed.

*For affirmance*—Chief Justice Weintraub, and Justices Jacobs, Francis, Proctor, Hall, Schettino and Haneman—7.

*For reversal*—None.