The UPJOHN COMPANY, a Delaware corporation, Plaintiff,

v.

VINELAND DISCOUNT HEALTH & VITAMIN CENTER, INC., a Pennsylvania corporation, Defendant.

Civ. No. 473–64.

United States District Court
D. New Jersey.

Nov. 9, 1964.

Bleakly, Stockwell & Zink, by John A. Fratto, Camden, N. J., for plaintiff.

Epstein & Fluharty, by E. Stevenson Fluharty, Camden, N. J., Samuel M. Tollen, Chester, Pa., for defendant.

COHEN, District Judge:

This is a civil action between corporate litigants of different states involving alleged unfair competition in violation of the New Jersey Fair Trade Act, R.S. 56:-4-5, 6, N.J.S.A., and the related federal statutes, Miller-Tydings Amendment, 15 U.S.C. §§ 1–8; McGuire Fair Trade Act, 15 U.S.C. § 45. Jurisdiction is properly invoked. Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3 Cir. 1958).

Plaintiff Upjohn Company, a Delaware corporation, seeks to enjoin permanently defendant Vineland Discount Health & Vitamin Center, Inc., a Pennsylvania corporation, authorized and doing business in the State of New Jersey, from retailing below prices established by plaintiff, pharmaceuticals, drugs and ethical-drug products trade-marked, manufactured and distributed by plaintiff within the State of New Jersey, as well as in other states which have Fair Trade laws. It is alleged that defendant's sales of plaintiff's products below Fair Trade Prices constitutes a continuing violation of the New Jersey Fair Trade Act.

Following defendant's Answer, plaintiff filed evidentiary affidavits, exhibits of its nationwide advertising and the existence of a Fair Trade Contract within the State of New Jersey. The parties entered into a Stipulation of Facts, submitting the matter for the Court's determination upon the record and respective briefs.

The material facts stipulated follow: Plaintiff has used "Upjohn" as a trademark for its products since 1891, and among other products, the trade-marks of "Unicap," "Lymacap," and "Zymadrops." It sells its products directly to retail licensed pharmacies and drug wholesalers. It also sells to local hospitals of this area, among others, at 40% below catalogue list price which, in many instances, is the same as the fair trade list prices. Similar arrangements exist with physicians and industry having doctors or registered pharmacists. A Fair Trade Agreement entered into between the State Drugstore of Orange, New Jersey, and plaintiff in effect since 1952, has been entered into evidence. From sometime in December, 1961 through February, 1962 plaintiff conducted a special sale for retail purchasers of "Unicap Multivitamins." The Fair Trade prices were 94¢ for a 24 tablet bottle and $3.11 for a 100 tablet bottle. The Special Sale combined these two bottles, for the period mentioned and advertised and sold on a national retail distribution basis, for the special price of $3.11, thereby effecting a consumer-savings of 94¢. Similarly, but unconnected, plaintiff is presently conducting a special sale [1] of a combination package of "Unicap Multivitamins" and "Unicap Chewables," during the period September 1 to November 1, 1964, providing a "free offer" of 24 tablets with the purchase of 100 tablets. Defendant in the course of its business sells at retail plaintiff's trade-marked products, below fair trade prices established by plaintiff within the State of New Jersey, despite plaintiff's interdiction by letter to defendant in April, 1963.

The defenses interposed bring into focus the issues requiring resolution. Defendant contends (a) the Fair Trade Act of New Jersey is unconstitutional; (b) plaintiff's fair trade contract does not comply with New Jersey law; (c) plaintiff is in open competition with defendant, there being no contract between them, and (d) by its conduct has abandoned its Fair Trade program as to certain items. Plaintiff counters that the Fair Trade Legislation of New Jersey protects its fixed fair trade prices; and that isolated promotional combination sales do not render it a competitor, or result in an abandonment of its price program established through Fair Trade contract in New Jersey, and elsewhere.

The constitutionality of Fair Trade legislation generally has received ample consideration,[2] while that of the New

---

1. During the pendency of this litigation, a Supplemental Stipulation was filed bringing to the Court's attention the currency of the second special sale by plaintiff, which sale is continuing during the composition of this opinion.

2. Sunbeam Corp. v. Wentling, 185 F.2d 903 (3 Cir. 1950), vacated per curiam 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed. 1369 (1951) on authority of Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1950). Schwegmann held "non-signer" resale price maintenance contracts were not excepted by the Miller-Tydings Amendment to the Sherman Anti-Trust Act, 15 U.S.C. §§ 1–8; however, after Schwegmann, Congress enacted the McGuire Federal Trade Act, 15 U.S.C. § 45 extending fair trade prices fixed in resale price maintenance contracts as effective

Jersey Fair Trade statute has received the specific sanction of the New Jersey Supreme Court. Lionel Corp. v. Grayson-Robinson Stores, 15 N.J. 191, 104 A.2d 304 (1954), appeal dismissed 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677; California Oil Co. v. Reingold, 5 N.J.Super. 525, 68 A.2d 572 (Chanc.Div.1949); Eli Lilly & Co. v. Sav-On Drugs, Inc., 57 N.J.Super. 291, 154 A.2d 650 (Chanc. Div.1959) aff'd 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1960), reh. den. 366 U.S. 978, 81 S.Ct. 1913, 6 L.Ed.2d 1268 (1961).

The New Jersey Fair Trade statute, supra, provides that commodities which are sold to consumers bearing the trademarks, brand or the name of the producer or owner of such commodities, and which are in fair and open competition with those of the same general class produced by others, may be sold or resold at prices established by the vendor. That the products here in question are of the type and general class in fair and open competition has been stipulated by the parties. That such a price establishment has been made by plaintiff within the State of New Jersey is evidenced by the contract of State Drugstore effected in 1952, and which is part of the record. The fact that such a resale price maintenance program has been established by the owner of the trademark commodity is all that is required by the statute. The "contract" which is involved need not be with the defecting retailer, for it is a mere price-fixing device made available to the owner by the statute for the protection of his trademark product and the established retail price system within the area in question. Houbigant Sales Corp. v. Woods Cut Rate Store, 123 N.J.Eq. 40, 43, 196 A. 683 (Chanc.1937). Such a contract is but one of the means of communicating to the trade knowledge of established prices

and a resale price maintenance program. The foundation of a suit for violation of a Fair Trade Act, while often involving breach of contract, is more properly one for unfair competition for violation of the statutory protection bestowed upon the commodity for the benefit of the trade-mark owner, or producer, against price-cutting dealers who have knowledge of an established minimum resale price maintenance system and program. R.S. 56:4–6, N.J.S.A.; 1 Callmann, Unfair Competition and Trade-marks (2d ed. 1950) sec. 22.4 pp. 447–454.

The preservation of the legislative design for Fair Trade resale price maintenance by adherence to basic equitable principles in its enforcement is the pivotal concern of the judiciary. Texas Co. v. DiGaetano, 39 N.J. 120, 129, 187 A.2d 721 (1963); Gillette Co. v. Two Guys from Harrison, Inc., 36 N.J. 342, 349, 177 A.2d 555 (1962).

In United States Time Corp. v. Grand Union Co., 64 N.J.Super. 39, at page 47, 165 A.2d 310, at page 314 (Chanc.Div.1960), the Court stated:

"The Fair Trade Act carries with it the fundamental equitable concept that he who seeks equity must do equity; thus, when the manufacturer or producer seeks the benefit of the act, he should be given relief in equity only in case he has acted fairly toward all others affected by the contract. He must refrain from causing any unjust discrimination among the retail dealers, and in addition must exercise reasonable diligence to see that his products are not sold to a retailer who cuts prices after the producer has notice of such violation and he may be required to resort to legal action if necessary." (citations omitted.)

This language is cited with approval in Texas Co. and adopted in the statement

even as against non-signers. See: Norman M. Morris Corp. v. Hess Bros., Inc., 243 F.2d 274, 64 A.L.R.2d 750 (3 Cir. 1957), sustaining the constitutionality of the McGuire Act extension; Schwegmann Bros. Giant Supermarket v. Eli Lilly & Co., 205 F.2d 788 (5 Cir.

1953) cert. den. 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369, reh. den. 346 U.S. 905, 74 S.Ct. 217, 98 L.Ed. 404; Sunbeam Corp. v. Richardson, 243 F.2d 501 (6 Cir. 1957); General Electric Co. v. Hess Bros., Inc., 155 F.Supp. 57 (E.D. Penna.1957).

of Justice Haneman in Gillette, and here most appropriate (36 N.J. at p. 349, 177 A.2d at p. 559):

"A producer may not market, in combination, fair traded articles or even articles fair traded with articles not fair traded if the marketing is done in such fashion as to subvert the principles of fair trade legislation. In utilizing such marketing techniques the interests of the public and retailers must be recognized; otherwise, they would be at the mercy of a producer who could with impunity devise combination price schemes which [could] seriously hamper the retailers' sale of the single item already on sale at an established fair trade price."

Such then is the pattern of the New Jersey Fair Trade resale price maintenance law against which the marketing conduct of plaintiff, as well as the sufficiency of defenses interposed to this action, may be viewed.

■ Neither the attack by defendant upon the constitutionality of the Act, nor its claim that it cannot be bound by a Fair Trade program to which it is not a contracting party can prevail. Lionel Corp. v. Grayson, etc., supra. However, its contentions that plaintiff has assumed the role of a competitor by selling to hospitals, physicians and industrial clinics at prices below its own established fair trade prices possess considerable merit. With equal force, defendant urges that by using combination sales of the type here challenged, plaintiff's conduct constitutes as to such items an abandonment of its own fair trade program. Thus, defendant argues that plaintiff by its own conduct has precluded itself from injunctive relief. Plaintiff counters with the proposition that it may engage in institutional selling and physician accommodation at prices below fair trade prices without becoming a competitor, and that its combination sales, rather than an abandonment of its fair trade program, are merely techniques for the promotion of its products.

First blush impressions, persuasive at the outset, must give way to careful assessment of the conduct of the litigants upon which the suit is predicated, and the analysis of the law which is applicable and dispositive.

■ Accordingly, in Burroughs Wellcome & Co. v. Weissbard, 129 N.J.Eq. 563, 20 A.2d 445 (Chanc.1941), aff'd 130 N.J.Eq. 605, 23 A.2d 396 (E. & A. 1942), the Court held that exemption from fair trade prices of pharmaceutical products in favor of physicians, dentists, veterinarians, clinics, hospitals and charitable institutions did not destroy plaintiff's right to relief. It was observed that the prices fixed were uniform, that the exemption was available to all retailers, and that it did not adversely affect any public policy. Such exemptions for public service purposes are common. 1 Callmann, Unfair Competition and Trade-marks, supra, p. 496. In Texas Co., an exemption from fixed gasoline fair trade prices for "commercial accounts" was held illusory and constituted an abandonment of fixed prices as an unreasonable and unwarranted departure from the fixed price schedule, hence it is distinguishable from Burroughs, supra. Cf.: Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co., 128 Conn. 596, 24 A.2d 841, 845 (Sup.Ct.Err.1942), sustaining an exemption for physicians, etc., but intimating an exemption such as in Texas Co. and anticipating its invalidity. However, the resolution of this particular issue is not essential to the decision here, as will appear.

■ The question of abandonment by the use of combination sales presents a more vexatious problem. In maintenance of a resale price system, the trade-mark owner, or producer, must avoid any conduct which is inconsistent therewith. The usual requirements of equity, good faith and clean hands, must be met if one is to secure equitable relief. Relief is barred where one is guilty of price-cutting either directly by discriminating among retailers, or by dealing with

consumers, or indirectly by combination sales. Gillette v. Two Guys from Harrison, supra; Texas Co. v. DiGaetano, supra; 1 Callmann, supra, p. 495.

Combination sales, while used as advertisement devices for consumer stimulation, nevertheless, effect a cut in the established fair trade price of the individual commodities so coupled, the very conduct prohibited of the retail dealers, and have been judicially regarded as an abandonment of the resale price maintenance system by the trademark owner, or producer. Gillette Co. v. Two Guys etc., supra. 1 Callman, supra, sec. 24.2(c) (3) pp. 482–483; sec. 24.3(c) pp. 491–499. Such manufacturer price-cutting has been declared to be an abandonment where the combination sale of fair trade articles is by separate manufacturers, Magazine Repeating Razor Co. v. Weissbard, 125 N.J.Eq. 593, 7 A.2d 411 (Chanc.1939); or where fair trade articles are combined irrespective of aggregate price, Bathasweet Corp. v. Weissbard, 128 N.J.Eq. 135, 15 A.2d 337 (Chanc.1940); or where only one of the combined articles has a fair trade fixed resale price, Frank Fischer Mdsg. Corp. v. Ritz Drug Co., 129 N.J.Eq. 105, 19 A.2d 454 (Chanc. 1941). In Gillette, the combination sales involved both a packaging of two fair trade items, as well as a combination sale of a fair trade item with a non-fair trade item, with the economic effect of diminishing the fair trade prices of the component items, wherein it was held that such constituted an abandonment of those items sold below the fixed price under the resale price maintenance program. Justice Haneman observed 36 N.J. at page 350 of the opinion, 177 A.2d at page 559:

"It may be that a combination could be used without loss of the fair trade price on individual items if the producer employed a program whereby the retailers holding such individual items would plainly be protected against all economic loss with respect to them. No such program here existed and hence we need not explore that question. We must conclude that in the present case the fair traded price of the individual items was abandoned."

It is difficult to perceive a difference between the instant case and Gillette on the question of combination sales and abandonment. The identical argument of promotional sales technique for a limited time was there advanced to no avail. This court, in the construction and application of the New Jersey statute, is constrained by the law declared by the New Jersey Supreme Court in Gillette.[3] The problems there alluded to, of maintaining the legislative Fair Trade philosophy for trade-mark and brand name commodities of the same general class in fair and open competition, and at the same time providing equitable remedies for infractions of legislative design occasioned by unfair competition, although in some instances attributable to awkward marketing techniques, are no less evident here. But courts cannot judiciously interfere with marketing structures by implying contractual limitations or reservations for well intentioned sales stimulation, or impute to the legislature the contemplation of exemptions not contained in a statute in derogation of the common law. The wisdom and adequacy of price level maintenance is for the legislature. Deviations from established price levels are matters peculiarly within the sphere of merchandising contracts and marketing agreements and techniques. However, such conduct must stand the test of the statute providing for fair trade, as well as that interdicting unfair competition. R.S. 56:4–5, 6, N.J.S.A.

While there appears to be no question of good faith on the part of plaintiff with respect to the combination

3. Gillette Co. v. Two Guys from Harrison, Inc., 36 N.J. 342, 177 A.2d 555 (1962); West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940), pp. 236, 237; Caporossi v. Atlantic City, 220 F.Supp. 508, p. 514 (D.C. N.J.1962), aff'd per curiam 328 F.2d 620 (3 Cir. 1964) cert. den. 85 S.Ct. 51 (1964).

sales in December, January, and February of 1961–1962, and currently, between September 1 and November 1, 1964, the end will not justify the means so employed within the law as declared in Gillette. Promotional techniques, however worthy, must be deployed within the complex network of the Fair Trade Resale Price Maintenance System as established in the market and as declared by law. And while it may be that subsequent to the combination sales of 1961–1962, plaintiff reestablished those items within the coverage of its Fair Trade program, and insisted upon a compliance therewith by defendant in April, 1963, we are confronted, nevertheless, with its current combination sale. Such a special sale is tantamount to an abandonment of those articles from its Fair Trade program under the holding of the Gillette case, and it is hereby so determined. Until such conduct of plaintiff is curtailed, and its program properly reactivated, it is not entitled to the relief sought in its present action. Whether such abandonment can be cured, as plaintiff intimates, by the mere amendment of fair trade price schedules without the approbation of permissive legislation within the Fair Trade Act itself, poses a proposition which this Court is not presently called upon to meet.

It may very well be that nationwide introductory offers and extensive promotional sales for consumer stimulation, whether by way of combination sales or other marketing techniques, are desirable as ultimately inuring to the benefit of producer, retailer, and consumer alike. Product promotion and "huckstering" of a producers' wares are traditional practices as ancient as those of the Phoenician traders and as current as those of the Madison Avenue savants. It is inconceivable that our American economy is unable to accommodate such practices within legal Fair Trade structures. The resolution of such commercial dilemmas perhaps lies with legislation more realistically geared to such practices, as well as in the marketing ingenuity of the producers.

In conclusion, it seems fitting to incorporate the language of Judge Colles-

ter in United States Time Corp. v. Grand Union Co., 64 N.J.Super. 39, at page 50, 165 A.2d 310, at page 316 (Chanc.Div. 1960):

"It is obvious to this court that to permit the defendant to continue to sell plaintiff's products at cut-rate prices may well have a chaotic effect upon retailers in New Jersey. Many undoubtedly will conclude that they have a green light to cut prices of plaintiff's products and a price-cutting war may well result. In such an event the plaintiff may suffer irreparable injury, not adequately compensable in damages. Such a situation is a well recognized ground for equitable intervention by preliminary injunction." (citations omitted).

Plaintiff seeks to maintain its own Fair Trade Program within the State of New Jersey, as well as elsewhere. Once its own house is put in order, it can insist that retailers of its products conform to its established Fair Trade Program and, upon their failure to do so, invoke judicial relief.

For the reasons assigned, the request for grant of a permanent injunction is hereby denied, and the preliminary injunction heretofore issued is dissolved.

Counsel may submit an appropriate order.