90 N.J. Super. 358 (1966)
217 A.2d 631
BARR AND SONS, INC. OF CHERRY HILL, NEW JERSEY, PLAINTIFF, CROSS-APPELLANT, RESPONDENT,
v.
CHERRY HILL CENTER, INC., AND BAILEY, BANKS AND BIDDLE OF CHERRY HILLS, INC., DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1965.
Decided February 28, 1966.
*362 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Samuel Kalikman argued the cause for defendants-appellants.
Mr. Albert B. Melnik argued the cause for plaintiff-respondent (Messrs. Melnik, Tarter and Muller, attorneys).
*363 The opinion of the court was delivered by LEONARD, J.A.D.
Defendants Cherry Hill Center, Inc. (Center) and Bailey, Banks and Biddle of Cherry Hills, Inc. (Bailey) appeal from a judgment entered in the Superior Court, Chancery Division, which in part enjoined Bailey from selling on long-term credit and from advertising in the manner hereinafter discussed at its store located in the Cherry Hill Mall, Cherry Hill Township, Camden County, New Jersey. The judgment also awarded plaintiff, Barr and Sons, Inc. of Cherry Hill, New Jersey (Barr), damages in the sum of $5,914 and costs against both defendants.
Plaintiff cross-appeals from the damage award, alleging that the amount allowed was improperly computed and inadequate.
Center operates a large shopping mall in Cherry Hill Township in Camden County. On September 16, 1960 it entered into a lease with plaintiff for the rental of a store therein. The terms of a restrictive covenant to be placed in this lease were the subject of considerable prior negotiation between the parties. Plaintiff desired an exclusive right to sell jewelry on an installment basis and had attempted to get a commitment from Center that no other jewelry store would be "permitted to occupy space in the center unless said tenant operates as a strictly cash, class jeweler who does not offer, advertise or grant payment terms in excess of 90 days * * *." It objected to a clause that would permit occasional advertising or the placing of window signs by said tenant stating that "convenient terms" would be available.
Kenneth A. Gorman, vice-president of Center, testified that he had explained to Meyer Barr, plaintiff's then president, that the Center expected to have more than one jewelry operation therein and hoped to have both a quality jeweler and a credit jeweler; and that Barr had said on several occasions, "Well, okay, if you have Bailey, Banks or Caldwell, or somebody else like that, we have no problem."
In the course of the negotiations Barr wrote a letter to Center and stated:
*364 "Neither Bailey, Banks & Biddle, J.E. Caldwell or Coopers grant any convenient terms whatsoever. If they are the type of competition we are to have, we have no objection * * *."
As a result of these negotiations the following clause was inserted in the afore-mentioned lease between Center and plaintiff:
"Sec. 25
The leased premises shall be used by Tenant solely for the purpose of conducting therein the business of an installment-type jewelry operation for the sale, at retail, of jewelry, which includes diamond rings, plain wedding rings, mountings, settings, diamonds and other precious stones, stone rings, lockets and crosses, compacts, charms, brooches, watches (both men's and ladies), bracelets, watch attachments, lighters, pen and pencil sets, cuff links, scarf pins, earrings, pins, pearls, and all other similar and kindred articles of merchandise generally sold in other Barr's Jewelry Stores.
Landlord covenants and agrees that during the term of this Lease Agreement provided Tenant is not in default under any terms or conditions of this Lease Agreement, it will not lease or consent to the leasing of any store in Phase One of the Center (which shall mean 535,000 square feet of gross floor area) for the principal business of the sale, at retail, of installment-type jewelry. This restriction, however, shall not prohibit Landlord from leasing premises in the Center to `class and cash' jewelry stores of the type of Bailey, Banks and Biddle, or J.E. Caldwell Company provided the following use clause is inserted in such leases:
"The leased premises shall be used by Tenant solely for the purpose of conducting and maintaining therein the business of a quality jewelry store, and in all other departments of the business carry top level quality manufacturers. Tenant covenants and agrees that it will not engage in an installment type jewelry operation. The term "installment type jewelry operation" shall be interpreted to prohibit a holding out by Tenant either by newspaper, radio, direct mail or television advertisement, or within the windows of the leased premises that it offers long term credit or refers to weekly or monthly payment. However, Tenant shall have the right to make sales on a charge basis.'
In the event Landlord leases premises in the Center to `class and cash' jewelry store with the above use clause inserted therein, and the operation of any of the `class and cash' jewelry store becomes such that Tenant in good faith regards such operation to be in violation of said use clause, Tenant shall so notify Landlord in writing. Landlord shall in thirty (30) days after receipt of said notice, proceed to correct said violation, if it determined there is such a violation, or if it determines that there is no violation it shall so notify Tenant. * * *
*365 Provided further that in the event it is determined, as hereinbefore set forth, that the operation of any of the `class and cash' jewelry stores is such that it is in violation of its use clause, then Tenant shall be entitled to a rebate of all rentals paid from the expiration of the thirty (30) day period subsequent to the date of Tenant's notice to Landlord, until the date when said violation ceases."
Plaintiff commenced in business at the leased premises in October 1961 and is still operating therein. In May 1962 it became aware that Center was negotiating with Bailey as a prospective lessee. Josef A. Barr, who by that time had become plaintiff's president, testified that in May 1962 he learned from advertisements Bailey had run in Philadelphia newspapers that it proposed to open a store in the mall, and that Bailey's character as a "class and cash" jewelry store had changed and it was now soliciting trade on an "extended payment" basis. He therefore communicated this information to his lawyer.
On May 21, 1962 this attorney wrote a letter to Center objecting to any lease between Center and Bailey because Bailey "is under new management and is presently engaged in installment jewelry selling and advertising the same." Receiving no response to that letter he wrote again on June 19, 1962, calling attention to his prior letter. In response thereto he received a letter written on behalf of Center stating, "we do have a lease with Bailey, Banks & Biddle, but in entering into it we were aware and took into account our lease with Barr."
In fact, a lease between Center and Baiey had been signed on April 18, 1962. This lease contained the following clause:
"Sec. 25:
The leased premises shall be used by Tenant solely for the purpose of conducting therein the business of a quality jewelry store, carrying in all departments therein merchandise of top level quality manufacturers. Tenant covenants and agrees that it will not engage in an `installment type jewelry operation.' The term `installment type jewelry operation' shall be interpreted to prohibit a holding out by tenant either by newspaper, radio or direct mail or television advertisement or within the windows of the leased premises that offers a long term *366 credit or refers to weekly or monthly payments. However, Tenant shall have the right to make sales on a charge basis."
Bailey opened its store around the middle of October 1962. For the period of October 21, 1962 to April 1, 1963 it advertised both in the Philadelphia and Camden newspapers, using the following phrases:
 "extended payments available";
 "extended payments if desired";
 "terms if desired";
 "extended terms if you desire";
 "convenient terms may be arranged";
 "divided payments, of course";
 "divided payments if you desire";
 "terms available";
 "convenient terms";
 "no payment necessary until February 1963"
 (offer made on November 22, 1962);
 "charge it on our monthly budget plan";
 "terms, of course," and
 "terms arranged."
Moreover, Bailey's newspaper advertisement of January 12, 1964 offered terms of "Two Dollars monthly for each place setting."
In addition to the foregoing newspaper advertising, it appears that from October 17, 1962 to December 12, 1962 Bailey placed small signs in its store windows stating: "Convenient terms"; "Extended payments available"; and "charge it to our monthly budget plan." Further, a customer of Bailey's testified that in February 1964 he received through the mail a card from it stating, "Extended payments available."
On November 13, 1962 plaintiff filed a complaint in the Superior Court, Chancery Division against defendants, alleging that the above-detailed activities of Bailey were in violation of the terms of both plaintiff's and Bailey's respective leases with Center. It sought to restrain Bailey from selling or advertising the sale of jewelry on extended credit terms in *367 its store at the mall, and also sought damages against both defendants.
At the trial Barr elicited all of the above stated facts and, in addition, introduced into evidence interrogatories which indicated that from April 1963 through January 1964 Bailey's store at the Center had gross sales of $540,062 and that approximately $36,000 (6 2/3%) of that sum represented credit or installment sales.
Defendants did not attempt to controvert these proofs. They merely presented evidence demonstrating that Bailey was considered in the trade to be a "cash and class" retail jeweler whose quality of merchandise had not changed for approximately 40 years. In an attempt to indicate the high quality of Bailey's customers, testimony was submitted that no security was required of them, nor did a customer have to sign a note of indebtedness when a sale was made on credit for a term beyond 90 days. Expert testimony was elicited that Bailey and Barr appealed to different types of customers through their respectively different types of advertisement and that the stores were not in fact competitive.
The trial judge determined that Bailey had violated the restrictive covenants contained in its lease with Center in advertising as it did and in selling on long-term credit, and held that the restrictive covenant "[was] for the benefit of the plaintiff."
Defendants on this appeal first contend that Center did not violate the covenant in plaintiff's lease because Bailey is a "class and cash" jewelry store. They further argue that the covenant prohibits only a lease to any other store for the principal business of the sale at retail of installment type jewelry, and that at the trial below plaintiff offered no evidence that Bailey so operated. They assert, to the contrary, that the evidence indicated that only 6 2/3% of Bailey's business involved credit sales, thus allegedly negating such a conclusion.
At the outset, it is to be noted that the trial court made no express determination of the issue of whether or not Center *368 had violated its lease with plaintiff. As stated above, it was determined that Bailey violated the covenants in its lease with Center, and that this clause was inserted for plaintiff's benefit. However, the court also found as a fact that Barr had put Center on notice by the letters from Barr's attorney that there was a probability at least that the nature of Bailey's advertisements would render it a non-qualified lessee in the Center. Further, the conclusions of law of the court include a determination that Center did not "cure" the violation of the Barr lease constituted by Bailey's advertisement and sales after being informed of them. We construe these findings as a clearly implied holding that Center breached its lease with Barr, particularly in the light of the additional conclusion by the court that "both defendants have a joint responsibility respecting the damages" incurred by plaintiff. We regard this holding as correct if it is concluded that defendants' other arguments on this appeal are without merit.
Returning to a consideration of defendants' contentions as stated above, their unsoundness is demonstrated by a reading of the pertinent clauses in both of the leases, each of which cast light upon the other.
We consider first the clause in plaintiff's lease. That clause does provide that the landlord will not lease any store "for the principal business of the sale, at retail, of installment type jewelry." It is further true that it also provides that the restriction shall not prohibit the leasing to "class and cash" jewelry stores of the type of Bailey, Banks & Biddle. However these provisions were, by the terms of this covenant, conditioned upon the proviso that a use clause, worded as set forth therein, would be inserted in any such contemplated lease. That restrictive clause limited the use to which other leased premises could be put by stating that it was to be "solely for the purpose of conducting and maintaining therein the business of a quality jewelry store," and further, that "tenant covenants and agrees that it will not engage in an installment type jewelry operation."
*369 We consider next the corresponding clause in Bailey's lease. It likewise provided that the leased premises should be used by Bailey solely for the purpose of a quality jewelry store, and that the tenant would not engage in an "installment type jewelry operation."
It may be true that Bailey is regarded in the jewelry trade as a quality "cash and class" store, but it nevertheless covenanted in its lease not to engage in installment sales and advertising at its store in the Center. That covenant did not grant permission for long-term credit sales and advertising merely because such operations were limited to a small proportion of the total business transacted. The prohibition against "installment type jewelry operations" was total and complete.
The fact that Bailey did not require security from charge customers or require that such customers sign notes of indebtedness does not alter the fact that long-term credit was advertised and was extended. Those circumstances, therefore, do not detract from a conclusion that the covenants were violated.
Defendants attempt to further support their contention that they did not violate the said covenants by arguing that these covenants do not prohibit Bailey from selling on long-term credit. It is true that the language of the covenants in the lease prohibits only "a holding out" by the tenant through its advertising that it offers long-term credit, and that it does not explicitly prohibit long-term credit selling. But immediately following this prohibition appears the following sentence: "However, tenant shall have the right to make sales on a charge basis." (Emphasis ours) The implication is clear that the parties intended to prohibit long-term credit selling, as well as advertising the same.
Further, plaintiff is a credit jeweler and thus had an interest in retaining exclusively its right to sell on long-term credit. It had negotiated to this end and had desired a commitment from Center that no other store that sold jewelry would be permitted in the Center unless it operated as a *370 strictly cash, class jeweler who does not "offer, advertise or grant payment terms." It further advised Center that "If you propose to permit any other jeweler * * * to occupy space * * * and that firm offers any type of credit inducements or privileges in the selling of its merchandise then we have no further interest * * *." To construe the covenants to allow "selling," and to restrict the prohibitions to advertising, would be to virtually destroy the exclusive right for which plaintiff bargained. Under defendants' argument the buying public would have a choice between two stores at the Center where it could purchase jewelry on long-term credit. This would place Bailey in direct competition with plaintiff. We do not conceive that such a result was ever contemplated by the parties.
As was said in Renee Cleaners, Inc. v. Good Deal Super Markets of N.J., 89 N.J. Super. 186 (App. Div. 1965):
"An agreement, such as the one here involved, is to be construed in its entirety. Washington Construction Co., Inc. v. Spinella, 8 N.J. 212, 28 A.L.R.2d 863 (1951). In general, the polestar of construction is the intention of the parties as disclosed by the language used, taken in its entirety, and evidence of the attendant circumstances may be considered, not to change the agreement made but to secure light by which to measure its actual significance. Casriel v. King, 2 N.J. 45 (1949). Terms may be implied therein where the parties must have intended them `because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto.' * * *" (at p. 190)
The covenant in question must be construed in the light of both the circumstances under which it was written and the purpose, express or implied, of the parties in effecting their arrangements, in order that we may attribute to their language a rational meaning consonant with that purpose. Cragmere Holding Corp. v. Socony-Mobil Oil Co., 65 N.J. Super. 322 (App. Div. 1961).
So evaluated, it is our conclusion that the covenants in both leases prohibited Bailey from selling on long-term credit as well as from so advertising.
*371 Defendants next contend that since Barr and Bailey are not competitors, the prohibition contained in the above clauses is not necessary for the protection of Barr and is therefore an unreasonable restraint of trade. In support of this contention they rely upon Irving Investment Corp. v. Gordon, 3 N.J. 217 (1949), which held:
"A restraint to be reasonable must be such only as to afford a fair protection to the interests of the party in favor of whom it is given and not so large as to interfere with the interests of the public." (at p. 221)
While we agree with that legal principle, it does not compel resolution of the issue of the reasonableness of the restraint below in favor of Bailey. Plaintiff, as distinguished from the party seeking the restraint in Irving, does have a real interest to be protected by the restraint. It is a credit jeweler and thus has an obvious interest in retaining the exclusivity of its right to sell on long-term credit within the Center. While the greater part of Bailey's sales were on a cash basis, nevertheless $36,000 thereof during the period of April 1963 through January 1964 were proceeds from installment sales. This is a substantial amount. It could well have become larger if it had not been stopped. It is these sales with which the restrictive covenant is concerned. Plaintiff bargained for and obtained an agreement which prohibited other retail jewelers at the Center from operating an installment type jewelry store. To hold that Bailey is unreasonably restrained by the enforcement of the covenant herein would be to deny plaintiff the exclusivity for which it contracted and which was secured to it by the lease.
Although there is evidence herein that plaintiff and Bailey do not generally compete in the same type of market, defendant's witness who so testified conceded that "Obviously, there are no sharp lines in this." In addition, there was testimony adduced herein that Bailey recently had been acquired by a large national credit chain which thereafter had modified *372 Bailey's basic operations to include the extending of credit privileges.
Weighing all of these circumstances, we determine that the restrictions herein involved are valid as a reasonable protection for plaintiff.
Defendants next contend that the injunctions issued by the trial court are too encompassing, and not warranted by the provisions of the lease. They argue that the credit terms on the list enjoined from usage are not terms synonymous with "long-term credit" and are therefore not included within the prohibitions of the lease. In urging strict construction of the covenant, they rely upon Schlossbach v. Francis-Smith, 3 N.J. Super. 368, 372-373 (Ch. Div. 1949). However, this rule of strict construction has been modified in Cragmere Holding Corp. v. Socony-Mobil Oil Co., supra, 65 N.J. Super., at p. 325. It is counterbalanced by an evolving principle that such restrictive covenants will be realistically construed in furtherance of their obvious purpose. Renee Cleaners, Inc. v. Good Deal Super Markets, supra, 89 N.J. Super., at p. 189.
The court below, having determined that Bailey violated the restrictive covenant, enjoined the use of the following phrases:
"convenient terms; extended payments available; extended payments if desired; terms if desired; convenient terms may be arranged; convenient terms if you desire; divided payments, of course; divided payments if you desire; terms available; convenient terms; charge it on our monthly budget plan; and terms arranged, or other words of a similar tenor, or any other language implying or indicating directly or indirectly that said defendant will sell its merchandise on any long term credit terms."
We are of the opinion that the injunction was too broad. The covenant prohibited Bailey from holding out that it offered "long term credit or refers to weekly or monthly payment." It did not prohibit the offering by Bailey of any credit. To the contrary, it recognized the right of Bailey so to do, i.e., "the right to make sales on a charge basis." A *373 realistic construction of the clause leads to the inescapable conclusion that its obvious purpose was the prohibition of only "long term credit" and a reference to "weekly or monthly payment." Defendants concede only that they cannot use the latter type of payment plan.
We think the intent of the covenant will be reasonably met by modifying the injunction as follows: Bailey will be enjoined during the terms of the lease between plaintiff and Center (and including any renewal thereof) from selling on long-term credit or advertising for sale at its store located in Cherry Hill Mall, Cherry Hill Township, County of Camden, New Jersey, its merchandise directly or indirectly through any medium of communication, mail, radio, television, show windows or any other medium upon "extended terms," "extended payments," "charge it on our monthly budget plan," reference to monthly payments, or any other language implying or indicating directly or indirectly that Bailey will sell, or advertise for sale, its merchandise on any long-term credit. However, this injunction will not prohibit Bailey from selling or advertising merchandise for sale upon a charge basis or by any other language clearly indicating short-term credit. Specifically, Bailey shall not be enjoined from advertising or selling upon "credit," "terms," "convenient terms" or "divided payments," provided that the terms given are not in fact long-term, as understood in the trade.
Finally, we give consideration to the trial court's determination with respect to damages. The court awarded plaintiff damages against both defendants in the amount of $5,914. It first found as a fact that Bailey, during the period of April 1962 through January 1963, had $36,000 worth of gross sales resulting from installment selling, and that it had collected $2,314 as credit charges on those sales. The court then said:
"There is no testimony in the case as to the percentage of profit which this $36,000 worth of gross sales represents. There is certainly the item of charge on the credit sales, as has been so testified to. Assuming, however, that there is at least a ten per cent profit on the *374 $36,000 of gross sales, the Court awards a verdict in favor of plaintiff in the sum of $5,914." (Emphasis added)
This figure was arrived at by taking 10% of $36,000 and adding to it the $2,314 collected as credit charges.
Defendants contend that this award was unwarranted because plaintiff offered no proof of its actual damages. Defendants further contend on this point that there was no proof by plaintiff of the actual percentage of profit Bailey made on its installment sales, and that the figure of 10% was solely an assumption by the court with regard thereto.
Plaintiff, to the contrary, contends that the court's method of calculating damages against Bailey was proper. It argues that it would be impossible to fix the amount of damages plaintiff sustained as a result of defendants' breach of the covenant, or to prove Bailey's profits therefrom with exactness. Plaintiff further argues that the rules of damages used in patent infringement suits and as against trustees defaulting in their obligations, i.e., allowing the aggrieved party all the profits earned by the wrongdoer in the course of the wrong, is applicable herein. Plaintiff then asserts, on that basis, that "the court, from its experience, adopted 10% as the profit margin." This, it submits, should be upheld.
The duty imposed upon a lessor by a covenant in a lease which prohibits the lessor from renting any other part of his premises to a competitor of the lessee is, of course, a contractual one, and for a breach of that duty the lessee is entitled to recover damages in an action against the lessor. Annotation, 97 A.L.R.2d, § 2, p. 12. In such an action compensation, not punishment, is the end sought. Gonzales v. Rivera, 37 N.M. 562, 25 P.2d, 802, 804 (Sup. Ct. 1933) Compensatory damages are designed "to put the injured party in as good a position as he would have been if performance had been rendered as promised." 525 Main Street Corp. v. Eagle Roofing Co., 34 N.J. 251, 254 (1961). Compensatory damages for breach of an agreement in restraint of trade are measured by the "loss" sustained by the plaintiffs by reason of the violation by the defendants of their agreement, and *375 not by the profits made by the violator. Cramer v. Lewes Sand Co., 16 Del. Ch. 66, 140 A. 803 (Ch. 1928). See C.L. Holding Corp. v. Schutt Court Homes, Inc., 307 N.Y. 648, 120 N.E.2d 837 (Ct. App. 1954). Profits made by a defendant are not the measure of a plaintiff's damage unless plaintiff would have secured them in absence of the competition. Cramer, supra 140 A, at p. 806. In the latter event, defendant's profits would be direct proof of the loss sustained by plaintiff, and therefore recoverable by him as compensatory damages.
In a patent infringement case it may be inferred that sales of the patented article wrongfully made by defendant would have been made by plaintiff but for defendant's wrongful conduct. Sunbeam Corporation v. Golden Rule Appliance Co., 252 F.2d 467, 470 (2 Cir. 1958). Thus, the recovery of the infringer's profits is, in fact, compensation for the losses that the patentee has suffered from the invasion of his right. Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932); Gillette Company v. Two Guys from Harrison, Inc., 36 N.J. 342, 351 (1962). However, in a suit for damages for breach of a restrictive covenant no such inference is permissible. It cannot be inferred that all persons who purchased merchandise from Bailey in violation of the restrictive covenant would have purchased that merchandise from plaintiff but for Bailey's wrongful conduct. The court must take judicial notice of the fact that plaintiff has many competitors in the Cherry Hill area to whom intended purchasers could and might very well would go in order to purchase a particular item.
By reason of the foregoing the facts herein do not justify the court's action in converting Bailey into a trustee for Barr, nor do they warrant the application of the equitable principle of "unjust enrichment," which is the basis of the damage rule applied in patent infringement cases, as the measure of damages. Gillette Co. v. Two Guys from Harrison, Inc., supra, at pp. 351-352. Cf. United Board & Carton Corp. v. Britting, 63 N.J. Super. 517 (Ch. Div. 1960).
*376 Thus, we conclude that the court erred in awarding plaintiff damages measured by the profits made by Bailey. In any event, we find no justification for the court's calculation of Bailey's profits on the installment sales at 10% of the amount thereof.
Plaintiff must prove its damages, but as the court said in Ross v. Houck, 184 Pa. Super. 448, 136 A.2d 160, 162 (Super. Ct. 1957):
"Damages must be proven with all the certainty that the case permits. But in an action, such as this, for damages resulting from the breach of a restrictive covenant, in the very nature of things, absolute or mathematical certainty in the proofs cannot be required. 25 C.J.S. Damages § 162(2). Notwithstanding the obstacles confronting a plaintiff in the proof of pecuniary loss from the breach of such covenant damages are recoverable `to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty': Restatement Contracts, § 331, and Comment (d). Proof of damage with reasonable certainty is all that can be required where one party breaches his contract without legal justification (Taylor v. Kaufhold, 368 Pa. 538, 84 A.2d 347, 32 A.L.R.2d 575) when the amount cannot be determined with entire accuracy."
See also 5 Corbin on Contracts (1964), secs. 1021 and 1022, pp. 127-147.
An alternative permissible measure of damages in situations such as this is the difference between the rental value of the premises to the aggrieved lessee with the covenant unbroken and the rental value with the covenant broken. See Annotation 97 A.L.R.2d, § 28(a), p. 111.
The final issue to be resolved in this controversy is raised by the cross-appeal. This concerns the provision in the lease between plaintiff and Center to the effect that plaintiff may recover the full amount of rents paid to Center from 30 days after Center had notice of the breach by Bailey until such breach was corrected. Plaintiff argues that this clause be applied here in its favor.
In order for an agreement fixing the amount of damages made in advance of a breach to be enforceable as a contract it must be shown that (a) the amount so fixed is a *377 reasonable forecast of just compensation for the harm caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimate. Westmount Country Club v. Kameny, 82 N.J. Super. 200, 206 (App. Div. 1964).
We agree with the trial court that plaintiff has not been injured "to the extent that is called for by the lease, which provides for a full rebate of all rental paid." Such damages are not a reasonable forecast of just compensation for the harm caused by the breach herein. Therefore this provision is unreasonable and amounts to a penalty and thus is unenforceable. Westmount Country Club v. Kameny, supra, at p. 206.
In light of the foregoing, the injunctive portion of the judgment under review will be modified in accordance herewith and the damage portion is reversed. The matter is remanded to the Chancery Division for the entry of a modification of the restraint and a new trial as to damages only. No costs on this appeal.