The complainant, Frank Fischer Merchandising Corp., is a wholesaler-distributor of products bearing the trade-marks, *Page 106 
brands or names of manufacturers or producers. It filed a bill of complaint charging violations by the defendant of R.S. 56:4-3 etseq., commonly known as the "Fair Trade act," and the contracts and price schedules established thereunder for certain of the products distributed by the complainant. The present application is for a preliminary injunction. The facts are undisputed and the issues are resolved into pure questions of law.
There are three causes of action. With respect to the first cause of action, the bill of complaint and the answering affidavit reveal that The Andrew Jergens Company, which is a manufacturer or producer of soap sold under the trade-mark "Woodbury," had in accordance with the Fair Trade act established a minimum resale price for the sale of its soap. The Andrew Jergens Company thereafter voluntarily discontinued its price structure with respect to this article. Subsequently and in the month of July, 1940, complainant entered into contracts with certain retailers in the State of New Jersey under the Fair Trade act and gave notice to 1,200 retailers of the soap, including the customers of the complainant, that it had established a minimum resale price for Woodbury soap. The action of the complainant was taken without the knowledge, consent or approval of the owner of the trade-mark "Woodbury." It is conceded that the commodity is sold by drug and grocery stores in the State of New Jersey and that there are approximately 1,800 druggists and upwards of 4,000 grocers in this state. It is also not denied that the defendant has sold Woodbury soap at less than the minimum price established by complainant's contract.
There are two defenses asserted with respect to this cause of action: first, that since the complainant was not the owner of the trade mark nor the exclusive distributor of the product, it could not, without the authority or consent of the owner, establish a minimum resale price under the Fair Trade act; and, second, that the complainant has not complied with the statute in that it has not given notice of the price restriction to all retailers of the product including the immediate competitors of the defendant. It is alleged that as a result those retailers who have received no notice, and who *Page 107 
could not be shown to have had knowledge of the resale price were not bound by the contracts of the complainant.
Were the first defense presented for the first time I would be inclined to sustain it. The history of the statute indicates a legislative intent to protect the good will of the owner of a trade or other identifying mark. It was for this reason that Fair Trade acts were sustained by the Supreme Court of the United States in Old Dearborn Distributing Co. v. Seagram-DistillersCorp., 299 U.S. 183; 57 S.Ct. 139; 81 L.Ed. 109; and our Court of Errors and Appeals in Johnson Johnson v. Weissbard,121 N.J. Eq. 585; 191 Atl. Rep. 873. The act introduced into the law the concept that the owner of a trade-marked article retained an interest in his commodity after he parted with ownership and that he was therefore entitled to protect his good will by preventing the resale of his product below a fixed minimum price. These decisions should not be extended to one who does not own the trade-mark and who is not authorized to protect the good will of the owner. However, in Schenley Products Co. v. FranklinStores Co., 124 N.J. Eq. 100; 199 Atl. Rep. 402, the Court of Errors and Appeals held that any distributor may fix prices under the statute. The California Fair Trade act was similarly construed in Parrott Co. v. Somerset House, Inc.
(California Superior Court), 3 C.C.H. Trade RegulationService (8th Ed.) ¶ 25,026, although the complainant in that case actually had an exclusive franchise contract with the manufacturer. The court there said:
"The court does not join with counsel for the defendants in the fear of general disruption and confusion of the retail trade and of retail prices in the event that several wholesalers of the same product should set different prices by their contracts with their vendee-retailers. Such a possibility exists if the producer should fail to exercise the power given by the statute to fix prices when he makes the sale in the first instance, but preservation of the trade in any given commodity would dictate a different course. No doubt the producer would find means of preventing it once it had commenced."
I am not so sanguine that the matter can be thus lightly *Page 108 
dismissed. Compare the comment in the recent decision ofAutomotive Electric Service Corp. v. Times Square StoresCorp. (December, 1940), (New York Supreme Court, SpecialTerm), 3 C.C.H., op. cit. ¶ 25,581. The chaotic conditions which have already resulted from this statute are reflected by the decisions of this court in Calvert Distilling Co. v.Gold's Drug Stores, 123 N.J. Eq. 458; 198 Atl. Rep. 536;Magazine Repeating Razor Co. v. Weissbard, 125 N.J. Eq. 593;7 Atl. Rep. 2d 411, and the situation which this case presents can only mean additional confusion. However, in this phase of the case I am bound by the decision of our highest court and I therefore hold that in the present posture of the law the complainant has a status to maintain this suit.
I deal now with the second defense to the first count. It has been pointed out that the statute is broad in its terms and that by establishing merely general principles the legislature has placed upon the courts the burden of interpretation and of judicial construction. In Calvert Distillers Corp. v. NussbaumLiquor Stores, 2 N.Y.S. 2d 320 (at p. 324), Mr. Justice Shientag aptly said:
"The statute should be construed to effectuate its complete purpose, which is not alone to protect the owners of brands, but also to protect the retailer and the consuming public as well. In construing and enforcing the statute * * * equitable principles must be applied suitable to the nature and purpose of the law involved. If the power conferred by the statute upon producers and owners to fix and enforce retail selling prices is not subject to equitable restrictions and safeguards imposed by the courts, then every retailer must hold his business life at the sufferance of producers and owners who may act arbitrarily and who may be actuated by favor or caprice. If equitable restrictions and safeguards may not be applied by the courts, then, instead of being a `Fair Trade act,' the statute would become an act to permit unfair trade and business practices."
With this statement I am in accord and this court has heretofore applied equitable principles in its construction of the statute so as to avoid hardship or inequity. A manufacturer or such other person entitled to operate under the *Page 109 
statute must subject all retailers selling his commodity to restrictions which are uniform, otherwise he permits discrimination between classes of consumers and classes of retailers. Except as the legislature itself may constitutionally provide, the fixed price must apply to all consumers alike and this can be accomplished only by binding all retailers to maintain the same minimum price schedule. A manufacturer may not require or permit one group of retailers to sell at a fixed price leaving another group selling the same product free to pursue its own price policy. Similarly the manufacturer may not, except as permitted by statute (see 1940 amendment exempting libraries) set a different price for classes of consumers. The very description of the statute as a Fair Trade act carries with it the fundamental equitable concept that "equality is equity." Exemptions from price restriction cannot be left to the sole uncontrolled, arbitrary act of the manufacturer.
It is urged by the complainant that it did enough when 1,200 retailers were notified and that the defendant could itself notify competitors, if this be necessary. The manufacturer has the original option to sell his products in New Jersey without regard to the Fair Trade act but when he elects to avail himself of the benefits of the statute he assumes the burdens which it imposes. The retailer does not generally know to whom the notice may or may not have been given. The legislature did not intend to cast upon him the obligation of ascertaining whether his competitors had knowledge of the existence of a price structure.
It is further urged by the complainant that a retailer in one section of the state does not directly compete with all others, that it would serve no purpose therefore to notify all retailers, and that the requirement is met by merely giving notice to the retailers in the competitive area of the defendant. The statute is state-wide in its application and the court cannot draw the line where competition begins in one section of the state and ends in another. The execution of one contract with a retailer in this state no matter where he is located, is sufficient to bind all other retailers throughout the state, and this being so it cannot be said that the statute calls for *Page 110 
a distinction as to competitive areas where the manufacturer or distributor has failed to bind all retailers to maintain the minimum price fixed by him. No effective fair trade policy has been adopted and the defense to this count will be sustained.
The second and third parts of the bill deal with so-called combination packages. In each case the product was originally placed under the operation of the Fair Trade act by the owner of the trade-mark or his authorized agent, and no question is raised as to this issue or as to the sufficiency of notice to retailers.
The two products referred to in the second cause of action have been combined as the result of an agreement between the manufacturers thereof permitting the sale of their respective articles in combination at a price less than the sum of the fair trade price fixed for each individual unit. The defense asserted to this cause of action is that the agreement between the manufacturers which gave rise to the combination is illegal both under the common law and the Sherman Anti-Trust act,15 U.S.C. 67; 1.
The Fair Trade act was adopted to legalize "vertical price fixing." It permitted a manufacturer selling to a distributor or a retailer to exact an agreement that the trade-marked product would not be sold at retail below a fixed minimum price. The statute does not validate agreements between manufacturers relating to resale price maintenance, generally known as "horizontal price fixing." At common law in this state these agreements were illegal, Ingersoll v. Goldstein, 84 N.J. Eq. 445; 93 Atl. Rep. 193, and with respect to articles passing in interstate commerce were prohibited by the Sherman Anti-Trustact and the Federal Trade Commission act. Dr. Miles Med. Co.
v. John D. Park Sons Co., 220 U.S. 373; 55 L.Ed. 502; FederalTrade Commission v. Beech-Nut Packing Co., 257 U.S. 441;66 L.Ed. 307.
At the time the Fair Trade act was passed in New Jersey, there was grave doubt as to whether it would apply to manufacturers engaged in interstate commerce. To permit such contracts involving interstate sales, Congress enacted the Miller-Tydingsact as an amendment to the Sherman and the *Page 111 Federal Trade Commission acts. The amendatory statute provided, however, that it did not "make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices * * * between manufacturers, or between producers, or between wholesalers * * * or between retailers, or between persons, firms or corporations in competition with each other."15 U.S.C. § 1 (as amended). A reading of this statute clearly indicates that agreements between manufacturers operating in interstate commerce, without regard to whether they are competitors, are illegal. The New Jersey statute which validates price maintenance contracts provides that "This article shall not apply to any contract or agreement between wholesalers or between producers or between retailers as to sale or resale prices."R.S. 56:4-4.
Where horizontal price fixing occurs there is no "fair and open competition" left to "commodities of the same general class as produced by others" as required by the New Jersey Fair Trade act. It has been so held with respect to a similar situation under the Ohio statute. Rayess v. The Lane Drug Co. (Ohio Court ofAppeals, 1940), 3 C.C.A. op. cit. ¶ 25,602.
In view of the invalidity of the agreement, as a result of which the minimum resale prices of the articles involved in the second cause of action were established, the complainant is not entitled to relief.
In the third cause of action the complainant has set forth a list of products which it alleges are being sold by the defendant at less than the minimum resale prices fixed by the manufacturer or distributor thereof. It appears from the admitted facts that after the fair trade prices were established for the respective commodities, the manufacturer or producer thereof put out a combination package, one unit of which was the article listed in the complaint. One of these combinations is a result of an agreement between manufacturers and this has already been dealt with in this opinion and in Magazine Repeating Razor Co. v.Weissbard, supra. The remaining exhibits take various forms. Some combinations are styled "2 for 1 combination" in which two identical *Page 112 
products are combined to be sold at the price of one, or "1c sale combination," in which one unit of the combination bears the regular fair trade price and the other, identical in form and contents, is priced at one cent.
One combination package consists of three identical articles, the combination to sell at forty-nine cents. The fair trade price of each individual unit, if sold independent of the combination, is nineteen cents. In every case the minimum resale price of the combination package is less than the total of the fair trade prices or other values of the individual products which are a part of the unit.
All of the remaining exhibits fall into one of these groups with minor variations as to the form of the combination or a differential in price. They are all alike in that at least one of the units of the combination is price-fixed and in every case the price of the combination package reduces the value of the individual unit for which a minimum resale price had previously been established. The manufacturer is attempting to enforce at the same time its two price schedules for the combination and the individual article. The evils of this practice have already been discussed. Bathasweet Corp. v. Weissbard, 128 N.J. Eq. 135;15 Atl. Rep. 2d 337. This court held that the act of the manufacturer resulted in an abandonment of the minimum resale price which had been fixed for the articles which were a part of the combination.
It is urged by the complainant that the giving of discounts for the purchase of a quantity of merchandise is an established merchandising custom, and that sales in combination are quantity sales entitling the purchaser to a discount. The Fair Trade act "expresses a new business policy by the law making body of the state." Calvert Distillers Corp. v. Nussbaum Liquor Stores,supra; Bristol-Myers Co. v. Lit Bros., 336 Pa. 81; 6 Atl. Rep.
2d 843 (dissenting opinion). While some classification of retailers has been permitted, Revlon Nail Enamel Corp. v.Charmley Drug Shop, 123 N.J. Eq. 301; 197 Atl. Rep. 661,
nevertheless exemptions to certain classes of consumers by way of discounts have been held to be a violation of the statute notwithstanding that the practice antedated the Fair Trade act.Bristol-Myers Co. *Page 113 
v. L. Bamberger Co., 122 N.J. Eq. 559; 195 Atl. Rep. 625;affirmed, 124 N.J. Eq. 235; 1 Atl. Rep. 2d 332.
The manufacturer itself recognized the vice of combination prices for the very contract in this case prohibits the retailer from making any combination of the article, the effect of which is to diminish the fair trade price already established on the particular product. The same diminution occurs when the manufacturer markets a combination package in the forms described above. No relief can be granted where the manufacturer has abandoned his price structure. The application for an injunction will be denied.
Since there are no factual issues the parties may mould their pleadings as if the matter were at final hearing and may present a decree in accordance with this opinion. *Page 114