90 N.J. Super. 404 (1966)
217 A.2d 889
MENLEY & JAMES LABORATORIES, LTD., A CORPORATION, PLAINTIFF,
v.
VORNADO, INC. D/B/A "TWO GUYS FROM HARRISON" AND JANICE PRODUCTS, INC., DEFENDANTS. MENLEY & JAMES LABORATORIES, LTD., A CORPORATION, PLAINTIFF,
v.
MAYFAIR SUPER MARKETS, INC., A CORPORATION, D/B/A "BIG W" DISCOUNT SUPER MARKETS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 2, 1966.
*408 Mr. John P. Hauch, Jr. for plaintiff (Messrs. Archer, Greiner, Hunter & Read, attorneys)
Mr. Dean Sandford for defendants (Messrs. Wilentz, Goldman & Spitzer, attorneys).
WICK, J.S.C.
Plaintiff instituted these actions seeking to permanently enjoin defendants, their servants, agents and employees and all persons acting in concert with them or under their authority or control, from advertising, offering for sale or selling at retail plaintiff's commodities "Contac" and "Contac Nasal Mist" at prices less than the stipulated minimum retail resale price established by plaintiff's fair trade contract entered into in New Jersey. Plaintiff is a wholly-owned subsidiary of Smith, Kline and French Laboratories. *409 In 1961 plaintiff developed at great expense a new product for the relief of nasal congestion due to the common cold and hay fever. This product is marketed under the trademark "Contac," which is registered to plaintiff, and also under plaintiff's trademark "Menj," a mark in the form of a monograph used to identify any product made by plaintiff. Plaintiff's capsules bear its trademark "Menj," and the cardboard packets in which they are packaged and sold to the customer bear its trademark "Menj" and its name "Menley & James Laboratories." "Contac" is sold by retail establishments over the counter to the consuming public in free, fair and open competition with many commodities of the same general class produced by others.
"Contac" is produced and warehoused by employees of Smith, Kline and French Laboratories. Plaintiff, however, pays for these services. Plaintiff also has spent in excess of $6,000,000 continuously and extensively advertising its product, trademarks and name to the consuming public.
Pursuant to the New Jersey Fair Trade Act, N.J.S.A. 56:4-3 et seq., plaintiff has entered into a fair trade contract with a retailer, "Napoleon's Pharmacy," the terms of which stipulate minimum retail prices of $1.49 for plaintiff's product "Contac" in its standard size package of 10 capsules, $2.75 for plaintiff's product "Contac" in its 20-capsule package, and $1.29 for "Contac Nasal Mist."
By letter dated November 19, 1964 plaintiff informed defendants of plaintiff's fair trade contract in New Jersey and the minimum retail prices established thereunder. Defendants were also informed of plaintiff's intention to enforce the minimum retail prices. The letter was signed by plaintiff's attorney and was personally delivered to the person in charge of defendant Vornado's store in Cherry Hill Township on November 20, 1964. Despite this notice defendants admit having sold "Contac" at less than the stipulated minimum retail prices.
Defendants contend that plaintiff has no standing to sue under the New Jersey Fair Trade Statute, N.J.S.A. *410 56:4-3 et seq. N.J.S.A. 56:4-6 makes the willful and knowing advertising, offering for sale or selling of any commodity at less than the price stipulated in the fair trade contract actionable "at the suit of the producer or distributor of such commodity." The evidence in this case has established that the trademarks "Contac" and "Menj" are registered to plaintiff, and that the trademark "Menj" appears on the capsule, and both trademarks, as well as plaintiff's corporate name appear on the cardboard packet in which the capsules are packaged. The product is manufactured by Smith, Kline and French employees and warehoused in the parent's warehouse, but it has been shown that plaintiff pays for these services. Moreover, the advertising expenses, which exceed $6,000,000 per year, are borne by plaintiff. Under these circumstances it must be held that plaintiff is the "producer" of "Contac" and "Contac Nasal Mist" and does have standing to sue under N.J.S.A. 56:4-6.
Defendants also contend that since plaintiff sells its product directly to drug wholesalers or to retail chain stores which have at least ten outlets and its own warehouse facility, and a registered pharmacist employed in each outlet, while maintaining fair trade agreements with retailers only, plaintiff has no standing to bring this action since it has not sold the product to the retailer. The pertinent statute is N.J.S.A. 56:4-5 which, after a general descriptive paragraph as to who and what are covered, set off as section (1), enumerates specifically the agreements which are not to be deemed illegal. These are:
"(a) That the buyer will not resell such commodity except at the price stipulated by the vendor;
(b) That the producer or vendee of a commodity require upon the sale of such commodity to another, that such producer agree that he will not, in turn, resell except at the price stipulated by such producer or vendee."
It is readily apparent that the material portion of the statute is subsection (a). Defendants urge that that subsection *411 be interpreted to be limited to agreements by a vendor and his immediate vendee, and not be extended to agreements between producers and remote vendees who intend to offer the product for resale. This issue has never been determined in a New Jersey case. However, in a Massachusetts case in which the court was faced with a statute whose language was identical to that of N.J.S.A. 56:4-5 (1)(a) and (b), it was held that "a fair trade contract may be made between a producer and retailer who do not trade directly with each other. The statute applies not only to contracts between the parties, but to any contract `relating to the sale or resale of a commodity', whether the sale is between the parties or not because the object is to protect the trade mark, brand or name of the producer or owner, whoever makes the sale." General Electric Company v. Kimball Jewelers, 333 Mass. 665, 132 N.E.2d 652, 656 (Sup. Jud. Ct. 1956). It is the producer or manufacturer who is primarily interested in protecting his trademark, and it is common knowledge that many of these do not sell directly to retailers but through middlemen. Corning Glass Works v. Max Dichter Co., 102 N.H. 505, 161 A.2d 569, 574 (Sup. Ct. 1960). In General Electric Company v. Home Utilities Company, 131 F. Supp. 838 (D. Md., 1955), affirmed 227 F.2d 384 (4 Cir. 1955), a fair trade agreement between a producer and retailer was upheld despite the fact that the producer distributed through middlemen but had never fair-traded at the wholesale level because it was found that it would be administratively too difficult and not as effective against price cutting as fair-trading at the retail level. This court feels that these cases are sound and chooses to follow them because it is the opinion of this court that the integrity of the product is best preserved in the eyes of the public by regulating the price at which the public can buy the product. These cases are certainly in line with the policy of the Fair Trade Act, as announced by the New Jersey courts, which is to prevent a destruction of the producer's good will, which is often established at great cost. Johnson and Johnson v. Weissbard, 121 N.J. Eq. 585 (E. & A. 1937), *412 and United States Time Corp. v. Grand Union Co., 64 N.J. Super. 39 (Ch. Div. 1960).
Defendants contend that the instant fair trade contract which provides that the "retailer will not * * * sell any of said commodities at less than the minimum retail prices stipulated" does not comply with the precise language of N.J.S.A. 56:4-5 (1) (a), which provides "That the buyer will not resell such commodity except at the price stipulated by the vendor * * *." Defendants contend that "stipulated price" is inherently irreconcilable with "stipulated minimum retail price." (Emphasis added) It is the settled law of New Jersey that fair trade contracts are not to be deemed invalid because they contain minimum rather than absolute or stipulated prices. Lionel Corp v. Grayson-Robinson Stores, 15 N.J. 191 (1954), appeal dismissed 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677 (1954). In line with the Lionel case it must be held that the instant fair trade contract does comply with the New Jersey Fair Trade Act even though it sets a minimum retail price rather than a single stipulated price.
Plaintiff admits that it will sell to only two classes  "wholesalers" and "chain stores with over 10 outlets, a central warehouse and a registered pharmacist at each outlet." The wholesalers are given a 15% trade discount, a 3% promotional discount, plus an additional 2% discount if a cash payment is made within 30 days. The chain stores are given a 10% trade discount, a 3% promotional discount and a 2% cash discount. The 5% differential is awarded to the wholesalers because of additional service they perform on behalf of plaintiffs. The chain stores are obviously retailers and are given discounts. Defendants do not fall within this class and must, therefore, purchase "Contac" from the wholesalers without the benefit of the discount from plaintiff. Defendants claim that this practice favors certain members of their class, retailers, over defendants, and is, therefore, an equitable bar to recovery under the fair trade contracts. Defendants contend that this is a discriminatory practice which bars plaintiff from enforcing its fair trade program.
*413 The cases defendants cite for this proposition are clearly distinguishable from the case at bar. Texas Co. v. Di Gaetano, 39 N.J. 120 (1963), was a case in which the manufacturer sought to exclude from its fair trade price, sales at retail to certain commercial consumers. This is entirely different from a trade discount to retailers. Frank Fischer Merchandising Corp. v. Ritz Drug Co., 129 N.J. Eq. 105 (Ch. 1941), held that the fixed resale price must apply equally to all retailers. United States Time Corp. v. Grand Union Co., supra, contains a statement that the manufacturer is bound to "refrain from causing any unjust discrimination among the retailer dealers." This statement was made in regard to enforcement of the manufacturer's fair trade program and is clearly distinguishable from a complaint in regard to a management decision as to whom to deal with directly. The case of Rubbermaid, Inc. v. Claber Distrib. Co. of Cleveland, Ohio Com. Pl., 205 N.E.2d 410 (C.P. 1965), strongly relied on by defendants, actually works against them. In that case it was held that additional services given to the manufacturer by the retailer permit the granting of an additional discount by the manufacturer. The power to balance the equities is not broad enough to regulate plaintiff's manner of doing business by requiring it to extend its pricing and allowance advantages equally to small and large retailers alike. Rubbermaid, Inc. v. Claber Distrib. Co. of Cleveland, supra, at p. 424. Price discrimination to customers is valid if reasonable. Lionel Corporation v. Klein, 35 Del. Ch. 218, 114 A.2d 652 (Ch. 1955).
A refusal to deal with a class whom a manufacturer believes it is poor policy to deal with is not inequitable. Plaintiffs may properly adopt such general practices consistent with sound business ethics as it believes will promote its business. Revlon Nail Enamel Corp. v. Charmley Drug Shop, 123 N.J. Eq. 301 (Ch. 1938).
In the instant case plaintiff has not discriminated against defendants. The same minimal retail price applies to all retailers  defendants and their competitors alike. *414 Plaintiff has exercised its prerogative in determining two categories, namely "wholesalers" and "chain stores with more than 10 outlets, a warehouse, and a registered pharmacist," with whom it wishes to deal directly. Plaintiff has not arbitrarily refused to deal directly with defendants. All plaintiff requires of defendants is that if they wish to deal directly with plaintiff they must prove that they have a central warehouse, at least ten outlets, and a registered pharmacist in each store. Plaintiff's reason for these requirements is economic, and its feeling is that its product should be dispensed by a registered pharmacist. This court refuses to rule that these practices are discriminatory, and must hold that they are not an equitable bar to enforcement of plaintiff's fair trade contract.
Defendants also contend that N.J.S.A. 14:15-4 bars recovery. It provides:
"Until such [foreign] corporation so transacting business in this state shall have obtained such certificate of the secretary of state, it shall not maintain any action in this state upon any contract made by it in this state."
Although plaintiff had not, at the time this suit was initiated, obtained a certificate authorizing it to do business in New Jersey, such authorization was obtained while the case was being tried. Since plaintiff is now authorized to do business in New Jersey, the statutory impediment is removed. Peter Doelger Brewing Corporation v. Spindel, 14 N.J. Misc. 523, 186 A. 429 (D. Ct. 1936).
Defendants' final contention is that plaintiff has abandoned its fair trade program by failing adequately to enforce its program and by enforcing it in a discriminatory manner.
"The Fair Trade Act carries with it the fundamental equitable concept that he who seeks equity must do equity; thus, when the manufacturer or producer seeks the benefit of the act, he should be given relief in equity only in case he has acted fairly toward all others affected by the contract." United States Time Corp. v. Grand Union Co., supra.
*415 A producer will be denied relief in equity when he waives his rights by permitting or tolerating the practice of price-cutting by retailers. Calvert Distilling Co. v. Gold's Drug Stores, 123 N.J. Eq. 458 (Ch. 1938). Defendants' contention that the fair trade program is not adequately enforced is predicated upon the theory that since plaintiff has never fair-traded at the wholesale level, it is not attempting to force the wholesalers to cease distribution of "Contac" to price-cutting retailers. It has already been decided earlier in this opinion that the manufacturer may feel that the best way to protect his good will is by controlling the retail price, and it is not necessary, therefore, that he fair-trade at the wholesale level in order to have standing to sue on a fair trade contract with retailers.
"There is no requirement in law that the plaintiff shall enter into agreements with the Supply Company or any of its distributors to cut off fair trade violators. Such a course might involve the plaintiff in a violation of the anti-trust laws." General Electric Company v. Home Utilities Company, supra.
It is true that a recent New Jersey case, United States Time Corp. v. Grand Union Co., supra, held that the manufacturer must exercise reasonable diligence to see that his products are not sold to a retailer who cuts prices, after the producer has notice of such violation, and he may be required to resort to legal action if necessary. Any notion that this statement required the manufacturer to see to it that his products are not sold to a price-cutting retailer was quickly dispelled by a later statement in that case that there was no evidence that plaintiff did not intend to do something about these violations either by cutting off their supplies or instituting legal actions. United States Time Corp. v. Grand Union Co., supra, at p. 48. It can be seen from this case that the manufacturer has alternative obligations, either to cut off the supply to a price-cutting retailer or institute legal actions. It should also be noted that the United States Time *416 Corp. case, like the present case, involved a manufacturer who only fair-traded at the retail level.
Defendants also rely on Magazine Repeating Razor Co. v. Weissbard, 125 N.J. Eq. 593 (Ch. 1939), which case also involves a manufacturer who only fair-traded at the retail level. In holding that at least where he does not resort to legal action, the producer is required to use reasonable diligence to see to it that none of his products continue to be sold to a retailer who cuts prices, that case also realized the alternative duty of the producer either to institute legal action or see to it that the product is not supplied to the violator.
In line with these cases it must be held that plaintiff has not waived its right to enforce its fair trade program by refusing to fair-trade at the wholesale level.
Defendants' final contention is that plaintiff is precluded from enforcing its fair trade program because it is discriminating against defendants in the enforcement of the program. Defendants contend that plaintiff only enforces the program against large chain stores while small stores are allowed to cut prices, and that plaintiff has only attempted to enforce its fair trade program in New Jersey in Monmouth, Ocean and Camden Counties. It is true that "[a fair trade manufacturer] will not be allowed directly or indirectly to discriminate unfairly. In availing himself of the benefits of the statute he must accept its burdens. The Fair Trade Act in its very essence calls for uniform enforcement without discrimination or favoritism. The producer cannot act arbitrarily in enforcing observance of fixed prices." Magazine Repeating Razor Co. v. Weissbard, supra, at p. 596. However, the producer is not required to commence all suits simultaneously. United States Time Corp. v. Grand Union Co., supra, at p. 48. He is justified in assuming that an injunction obtained in one case will be persuasive in obtaining voluntary discontinuance of other violators without litigation. Schering Corp. v. Martin Wholesale Distributors, Inc., 212 F. Supp. 325, 328 (E.D. Pa., 1962). In the last *417 analysis, it all comes down to a question of whether the producer or owner, by his acts or conduct, whether of commission or omission, may be said to have waived or abandoned his rights. Magazine Repeating Razor Co. v. Weissbard, supra, at p. 596. Evidence of enforcement during the pendency of the action is admissible. Parke, Davis & Company v. Jarvis Drug Co., 208 F. Supp. 350 (S.D.N.Y. 1962), and Johnson & Johnson v. Wagonfeld, 206 F. Supp. 30 (S.D.N.Y. 1960).
Plaintiff's failure to enforce its fair trade rights in the past does not forever foreclose it from enforcing them. Past failure to enforce fair trade rights does not preclude such an enforcement so long as the present enforcement is real and not illusory. Johnson & Johnson v. Wagonfeld, supra.
The burden plaintiff must bear is to demonstrate that regardless of its past practices, it is presently vigorously and without discrimination enforcing its fair trade rights. Parke, Davis & Company v. Jarvis Drug Co., supra. The enforcement of a fair trade program is necessarily of a continuing nature. In seeking to enjoin defendants, plaintiff seeks relief against future violations by defendants. Therefore, plaintiff's conduct should be scrutinized up to and including the time this relief is sought. If, at the time of the hearing, the court is convinced that plaintiff is vigorously enforcing its fair trade program, plaintiff should not be barred from recovery because, in the past, it may not have vigorously enforced its conduct.
This court is convinced that plaintiff is presently vigorously enforcing its fair trade program. In the instant case plaintiff has an extensive fair trade program involving an annual expenditure of more than $150,000, which is supervised by a fair trade manager. Plaintiff hires temporary employees, known as "shoppers," who periodically enter retail establishments that sell its product to see if the fair trade agreement is being violated. Plaintiff also learns of violations from competing retailers or district sales managers. Upon *418 learning of violations, plaintiff's fair trade manager sends a cease-and-desist letter to the alleged violator, and then sends out a "shopper" 10 or 14 days later to check on the effectiveness of the letter. If the retailer is still selling below the fair trade price, the matter is then turned over to counsel, who also sends a cease-and-desist letter. This is followed by an investigation by a professional investigator. If there is still a violation, plaintiff initiates a law suit. This court finds that such an extensive program, involving an annual expenditure of over $150,000, is an adequate policing of plaintiff's fair trade program, and plaintiff is not deemed to have abandoned the program. The fact that it has not yet successfully stopped each and every violation is immaterial. Moreover, this court finds that with its limited budget, enforcement is expanding throughout the State, as can be evidenced by the initiation of law suits in Vineland, Hamilton, Linden, Rahway, Scotch Plains, Newark, Union, Jersey City, Plainfield, Bloomfield, Cherry Hill, Atlantic City, Trenton, Bayonne and Bridgeton.
It is true, as deefndants point out, that most of the suits commenced by plaintiff have been against retail chain stores, rather than small retailers. However, it is quite possible that this is because small retailers voluntarily ceased selling below fair trade prices at earlier stages of plaintiff's fair trade program. Moreover, it is quite possible that more large retail stores violate the fair trade contract than small retail stores. In fact, most of the other violations introduced by defendants as evidence of abandonment were committed by large retail stores. Bearing this in mind, this court finds that plaintiff is not discriminating in enforcing its fair trade program.
In accordance with the findings made by this court, defendants, their servants, agents and employees, and all persons acting in concert with them or under their authority or control, are permanently enjoined from advertising, offering for sale or selling at retail, plaintiff's commodities "Contac" and "Contac Nasal Mist" at prices less than the stipulated minimum retail resale price in New Jersey.
*419 The action is dismissed as to defendant, Janice Products, Inc., in accordance with agreement of counsel, by virtue of the fact that Janice Products, Inc. has been dissolved.