388 F.2d 117
 VORNADO, INC., a Corporation of the State of Kansas, Appellant,
v.
CORNING GLASS WORKS, a Corporation of the State of New York,
Isaac Lehrhoff trading as I. Lehrhoff & Co., and
H. Schultz & Sons, a Corporation of the
State of New Jersey.
 No. 16282.
 United States Court of Appeals Third Circuit.
 Argued Sept. 14, 1967.
Decided Jan. 19, 1968.
 
 Allen Ravin, Wilentz, Goldman & Spitzer, Perth Amboy, N.J., for appellant.
 Clyde A. Szuch, Pitney, Hardin & Kipp, Newark, N.J. (R. Bruce Mac-Whorter, Shearman & Sterling, New York City, on the brief), for appellee, Corning Glass Works.
 John Kandravy, Shanley & Fisher, Newark, N.J. (Harold H. Fisher, Newark, N.J., on the brief), for appellee, H. Schultz & Sons.
 Before BIGGS, FREEDMAN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 BIGGS, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Vornado, Inc., has appealed from a judgment dismissing a complaint which alleged in substance that a resale price maintenance agreement entered into by the defendant-appellee, Corning Glass Works, with the defendant-appellees, the Lehroffs and with H. Schultz & Sons to enforce Corning's fair trade program constitutes a violation of the antitrust laws of the United States. An appeal also has been taken by Vornado from a judgment entered upon Corning's counterclaim restraining Vornado from violating the fair trade agreement referred to, made, as we have said, by Corning with Vornado. Jurisdiction is based on 15 U.S.C. 15.
 
 
 2
 The prime issues presented are whether Corning forfeited its right to enforce its fair trade program against Vornado because of exemptions Corning has given to trading stamp companies, and further if Corning's exemptions to trading stamp companies be permitted, whether Vornado's own trading stamp program, referred to more particularly hereinafter must also be deemed to be exempt.
 
 
 3
 The facts were stipulated and are disclosed by Judge Wortendyke in his exhaustive opinion, 255 F.Supp. 216 (D.N.J.1966). We state here only the facts which we deem necessary to decide the issues referred to. Corning is the manufacturer of a prestige line of ovenware and cookware. These items bear Corning's trademark and, as indicated, are subject to fair trade contracts that have been entered into by Corning in every State where such contracts are permitted by law. Corning has over 3,000 such contracts in New Jersey. Corning publishes its fair trade prices and employs personnel whose duty it is to enforce Corning's fair trade policies through shopping excursions and the warning of price cutters. During the period Nevember 1957 to June 1965, Corning obtained 18 permanent injunctions in New Jersey against violators of its fair trade prices.
 
 
 4
 Corning sells its products to wholesale-distributors such as Schultz and Lehroff who have agreed to resell those products at the fair trade prices established in wholesale fair trade contracts and to sell only to retailers who are franchised Corning dealers; i.e., to those retailers who have signed fair trade agreements with Corning. Such agreements are lawful in New Jersey. N.J.S.A. 56:4-5. Vornado signed such an agreement with Corning and proceeded to purchase Corning Ware from Schultz and Lehroff.
 
 
 5
 Corning Ware is also sold by Corning to trading stamp companies. Corning's total sales to New Jersey dealers in 1964 were $1,874,000. Of these the sales to trading stamp companies totalled $185,000. These trading stamp companies have redemption centers throughout New Jersey, some in the vicinity of Vornado's retail stores known as 'Two Guys from Harrison'. The trading stamp companies sell their stamps to retail merchants who customarily give one stamp for each 10 cents of the price of the article purchased. Between $120 and $150's worth of merchandise is required to fill one stamp book, the difference being dependent on which trading company's stamps are employed. At times the retail stores will offer bonus stamps with the purchase of a particular item. Merchandise at a redemption center may only be obtained by presenting completed books for the desired item. Aside from monies used for the collection of taxes, the redemption centers will not accept cash to supplement a deficiency in the number of books needed. A Corning Ware percolator for example requires 2 4/5 books of one stamp company or over $400 worth of purchases from the retail store issuing the stamps of that stamp company. Corning does not require the trading stamp companies to sign fair trade agreements, albeit Corning suggests values to be put on the stamps used to acquire Corning Ware but the trading stamp companies have not been required to, nor do they, abide by Corning's suggested valuations.
 
 
 6
 Vornado operates a program whereby its trading stamps are issued on food sales and also are redeemable in merchandise on sale at its retail stores. Unlike other trading stamp companies, Vornado advertises that a completed book containing its stamps is worth $2.25.[1]
 
 
 7
 In respect to its own trading stamp books, in October of 1962, Vornado commenced a merchandising program for the sale of Corning products which resulted in sales at less than the fair trade prices of the merchandise. Vornado's advertisements stated, to employ an example, that 'Your (the purchasing public's) books (are) worth up to $14.50 on these Corning Ware One Book Specials.' Below this legend there would be shown a 'Corning Ware Homemaker Set', list price $29.95 available at 'Two Guys' for $15.75 plus one book.[2] On such sales Vornado often made little or no profit and even took losses, the articles sold being used as 'loss leaders'. It is stipulated that trading stamp companies never assign such fluctuating values to their stamp books. As noted, the trading stamp companies never permit a combination cash-stamp book purchase.
 
 
 8
 Corning, upon learning of Vornado's merchandising campaign, sent a telegram to Vornado demanding that it stop such merchandising campaigns. There were some negotiations but no agreement was reached. Corning then terminated Vornado's franchise and so informed its wholesalers-distributors who in turn ceased deliveries to Vornado. Vornado brought the suit at bar alleging, as we have said, violations of the antitrust laws, claiming treble damages and seeking injunctive relief. Corning and the other named defendants answered denying any antitrust law violations. Corning pleaded its fair trade agreement with Vornado and sought damages for breach of contract and injunctive relief.
 
 
 9
 The trial judge stated: 'The provisions of the Fair Trade Agreements, between Corning and Vornado on the one hand, and Corning and each of its distributors on the other, were in all respects in conformity with the provisions of N.J.S.A. 56:4-5(1) and, therefore, within the exemptive proviso set forth in 15 U.S.C. 1.' 255 F.Supp. at 224. This finding by the court below is clearly correct. Thus, as hereinbefore stated the only issues before us are, first, whether Corning Glass, by exempting trading stamp dealers from its fair trade program, forfeited its right to maintain that program and thereby abandoned its right to resort to judicial process to enforce its fair trade agreements; and, second, if that exemption be permitted, whether Corning must apply that exemption to Vornado's own stamp program.[3]
 
 
 10
 Because we do not find that exemption of the trading stamp companies by Corning to be outside the policy of the exception to the antitrust laws granted for State Fair Trade Acts provided by the Miller-Tydings Amendment to the Sherman Anti-Trust Act, 15 U.S.C. 1, we need address ourselves only to the scope of permissible exemption under New Jersey law.
 
 
 11
 The policy of the New Jersey Fair Trade Act, like that of other fair trade acts, is 'to prevent a destruction of the producer's good will, which is often established at great cost. * * *', it appearing that this good will and 'integrity of the product is best preserved in the eyes of the public by regulating the price at which the public can buy the product.' Menley & James Labs., Ltd. v. Vornado, Inc., 90 N.J. Super. 404, 411, 217 A.2d 889, 893 (1966). 'The act introduced into the law the concept that the owner of a trade-marked article retained an interest in his commodity after he parted with ownership and that he was therefore entitled to protect his good will be preventing the resale of his product below a fixed minimum price.' Frank Fischer Corp. v. Ritz Drug Co., 129 N.J.Eq. 105, 107, 19 A.2d 454, 456 (1941).
 
 
 12
 The New Jersey courts have held that a company maintaining a fair trade program may establish exemptions to those programs, Burroughs Wellcome & Co. v. Weissbard, 129 N.J.Eq. 563, 20 A.2d 445 (Chan.1941), aff'd, 130 N.J.Eq. 605, 23 A.2d 396 (E. & A. 1942), provided that such exemptions are reasonable and have a 'certain or well-defined meaning'. Texas Co. v. DiGaetano, 39 N.J. 120, 131, 187 A.2d 721, 727 (1963). There must be an accommodation of the interests of the public, those of the businessmen subject to the fair trade enforcement and the interests of the fair trader himself. For example in the Texas Co. case, supra, the Supreme Court of New Jersey refused to enforce a fair trade program where the exemption granted was too ambiguous for retailers to know who was included in the exemption thereby leaving retailers to sell below fair trade prices at their peril, nearly complete discretion seemingly resting in the fair trader as to the selling prices. The Court considered that under such circumstances 'Upholding the fair trade agreement with its stated exemption would not serve to advance the protection of the good will symbolized by the producer's brand or trademark, nor would it afford an appropriate measure of protection to the retailers and the public.' 39 N.J. at 132, 187 A.2d at 727. See also Champion Spark Plug Co. v. T. G. Stores, Inc., 356 F.2d 462 (4 Cir. 1966).
 
 
 13
 The New Jersey courts also have concluded that the fair trader has abandoned his right to fix prices by using his own fair traded products either alone or with non-fair traded items in promotional combination packages. The New Jersey courts have held that under such circumstances the fair trader has indicated abandonment of his claim to protect the integrity of such fair trade items because of potential injury to retailers. Gillette Co. v. Two Guys from Harrison, Inc., 36 N.J. 342, 177 A.2d 555 (1962).
 
 
 14
 In another line of decisions New Jersey courts have held it to be no defense in a fair trade enforcement suit that the fair trader does not sell to all persons in the same class. For example, in Revlon Nail Enamel Corp. v. Charmley Drug Shop, 123 N.J.Eq. 301, 197 A. 661 (1938), the Court held that a fair trader could sell his items only to beauty shops and retail department stores and nontheless compel a drug store which had obtained such items in an undisclosed fashion not to sell below fair trade prices. The New Jersey Court held it to be no defense to an enforcement action that the fair trader refused to sell to drug retailers while selling to department stores.
 
 
 15
 We think that the essence of a fair trade program rests in large part on a somewhat elusive factor, viz., the status and integrity of the product in the mind of the consumer. In order to determine the validity of Corning's exemption of trading stamp companies and its failure to exempt Vornado's program we must attempt to divine the effect of the exemption. We therefore turn again to the peculiar circumstances presented by the case at bar.
 
 
 16
 It seems clear that New Jersey permits a fair trader to exempt some dealers from a price maintenance program if such exemption be consistent with the policy of the fair trade statute and not inequitable to those who become subject to the program.
 
 
 17
 We conclude that it cannot be fairly said that Corning's exemption to trading stamp companies is inconsistent with the policy of fair trade. A consumer obtaining a Corning Ware item at a stamp redemption center is unlikely to consider such an acquisition a denigration of the product acquired. As stated above such a consumer has to purchase between $120 and $150 worth of merchandise at the retail store to obtain one book of stamps. It is likely that a family will have to wait three to six months before being able to obtain, for example, a Corning Ware percolator. Moreover, the consumer has little means of comparing the value of the stamps redeemed with the established fair trade value of Corning Ware. As we have said actual valuations are considered to be a trade secret by the stamp companies. Also, if the retailer offers bonus stamps with the purchase of a particular item the consumer may well attribute his good fortune to the item purchased at the retail store and not to the Corning Ware acquired by him perhaps some six months later.[4] We conclude that Corning's exemption of trading stamp companies is a reasonable classification and within the spirit of the New Jersey Fair Trade Act.
 
 
 18
 Since we have found that Corning has not abandoned the integrity of its items by the trading stamp company exemptions, we now must decide whether such an exemption is inequitable to other persons subject to the program. Vornado contends that consumers who are able to obtain Corning products at stamp redemption centers will not buy the same product at retail dealers subject to Corning's fair trade program. We think Vornado's reliance on this argument is misplaced. Vornado surely may not complain that Corning supplies retail dealers other than 'Two Guys' with Corning Ware for distribution to ultimate customers. It is not enough to show that some consumers will go to stamp redemption centers and not to 'Two Guys'. Vornado must also demonstrate that potential customers of 'Two Guys' think they can obtain Corning Ware below fair trade prices by going to stamp redemption centers. As we have stated we think that the consumer does not draw such a conclusion simply because he has saved stamps issued by the traditional trading stamp companies and employs them to purchase Corning Ware. The consumer collects his stamps and must make a choice as to what product he desires and where he will acquire it. The consumer has great difficulty in accurately judging whether he achieves a better bargain by obtaining Corning Ware rather than some other article at a stamp redemption center in comparison with purchasing those articles at a retail store. We must conclude that Vornado suffers no inequity by the exemption granted trading stamp companies by Corning and thus cannot succeed in claiming that Corning has forfeited its fair trade program.
 
 
 19
 Finally, Vornado contends that it is discriminatory for Corning to distinguish between stamps issued by 'Two Guys' and stamps issued, for example, by Sperry & Hutchinson, a trading stamp company. In essence Vornado's contention is that although trading stamp exemptions may be proper and equitable they are applied discriminatorily since its own trading stamps do not receive the benefit of the exemption. There is no merit in this argument. Clearly, Vornado's stamp redemption program is unlike those developed by conventional trading stamp companies exempted by Corning. In fact, it is likely that an exemption to trading stamp programs such as Vornado's would result in an abandonment by Corning of its fair trade protection. Cf. Gillette Co. v. Two Guys from Harrison, supra.[5] Vornado allows mixed cash and stamp purchases. Consequently the separation of the retail product by which one obtains the stamps and the redemption of the stamps for the fair traded item which normally preserves the integrity of that item is largely nullified. Moreover, the merchandising campaign developed by Vornado emphasizes the fair trade product whereas the bonus stamp system of the other retail stores emphasizes the retail product with which the consumer obtains the stamps and seems unconnected with the integrity of the fair trade item. It can hardly be doubted that a consumer replying to one of Vornado's advertisements is of the opinion that he is getting a lower price on Corning Ware. This goes to the heart of the fair trade protection granted manufacturers by the State of New Jersey. On the other hand, as stated before, a consumer obtaining an item at a conventional stamp redemption center is not likely to be so affected. Moreover, it is likely that in the minds of the consumers the availability of Corning Ware at the stamp redemption centers increases the value of the stamps, rather than decreases the value of Corning Ware.
 
 
 20
 From the evidence presented on the present record we must conclude that Corning has a valid fair trade program, has given a valid exemption to trading stamp companies and may enforce that program against Vornado.
 
 
 21
 Accordingly, the judgment of the court below will be affirmed in all respects.
 
 
 
 [1]
 The value assigned to books issued by the trading stamp companies is considered a trade secret. Because of this it is unlikely that one could determine a valuation for the stamps consistent with fair trade prices set by Corning. Such difficulty seems to be inherent in the nature of trading stamp operations
 
 
 [2]
 See Exhibit J 12, Appendix of Respondent Corning Glass Works
 
 
 [3]
 Because we hold that Corning could properly exempt trading stamp companies from enforcement of its fair trade program and enforce its program against Vornado, we do not reach and voice no opinion on the question of whether Corning would be liable to Vornado under the Sherman Act if the trading stamp companies could not properly be exempted
 
 
 [4]
 Corning includes as part of its fair trade agreements with retailers the requirement that stamps issued in connection with a sale of a Corning product shall not exceed 3% Of the fair trade price of the product. This protects Corning items from being demeaned by the retailer offering large stamp bonuses in connection with a purchase of Corning Ware
 
 
 [5]
 We think that the result suggested, i.e., abandonment by Corning of its fair trade policy would almost necessarily result. Corning could not make an exception to Vornado's failure to preserve Corning's fair trade program and not give similar concessions to all retailers selling its producrs. Vornado's trading stamp program as operated by it seems to us obviously a price cutting ploy