**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2496-23

KRG BAYONNE URBAN
RENEWAL, LLC,

     Plaintiff-Respondent,

v.

WAL-MART STORES EAST, LP,

     Defendant-Appellant.

_____

Submitted October 28, 2025 – Decided March 16, 2026

Before Judges Sumners, Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000070-23.

McDonnell & Associates PC, attorneys for appellant (Patrick J. McDonnell and Brandon H. Zanan, on the briefs).

Sills Cummis & Gross, PC, attorneys for respondent (Mark E. Duckstein and Joshua N. Howley, of counsel and on the brief).

PER CURIAM

Defendant Wal-Mart Stores East, LP (Walmart) appeals three Chancery Division orders: (1) March 15, 2024, granting summary judgment to plaintiff KRG Bayonne Urban Renewal, LLC declaring that it can "lease space at Bayonne Crossing [Shopping Center] to any tenant for the principal use as a supermarket selling food in not more than 10,000 square feet" in accordance with the Exclusive Covenant in (exclusivity provision) in the parties' lease agreement; (2) March 15, 2024, denying Walmart's cross-motion for summary judgment seeking a determination that KRG's lease agreement with Aldi to operate a supermarket violates the exclusivity provision as well as the Declaration Concerning Easements, Covenants and Restrictions By Cameron Bayonne Urban Renewal, LLC For The Route 440 East Corridor Redevelopment Area (Declaration); and (3) June 20, 2024, granting KRG's reconsideration motion and declaring that the lease with Aldi conforms with the exclusivity provision and Declaration. We reverse.

I.

On June 15, 2005, the city of Bayonne adopted a redevelopment plan that included the construction of Bayonne Crossing on former industrial properties comprising a brownfield site. The plan initially prohibited "food/grocery supermarkets" whether operated in "stand-alone facilities or part of a general

2

merchandise retail use." But the plan was later modified to permit a supermarket or grocery store to encourage interest from general merchandise retailers whose stores included a grocery component.

About two years later, in January 2009, the redevelopment plan's list of prohibited uses was amended by deleting supermarkets, whether stand-alone or part of a general merchandise use. Accordingly, the redevelopment plan changed the first permitted principal use to "[c]ommercial retail sales and services consistent with North American Industrial Classification System (NAICS) Sectors 44-45, Retail Trade," which expressly included "establishments generally known as supermarkets and grocery stores" that are "primarily engaged in retailing a general line of food" with no reference to the establishments' size. These changes were the result of negotiations between Bayonne's City Planner, John D. Fussa, and Bayonne Crossing's developer, Cameron Bayonne Urban Renewal LLC, KRG's predecessor.

In June 2009, the redevelopment plan was amended again. NAICS's definition of grocery retailing was incorporated into the redevelopment plan's limited provision for grocery retailing as a principal use, stating: "Food/Grocery Supermarket: A permitted principal use involving the retail sale of food, groceries, packaged convenience items and household goods as defined at

3

subsection 445110 of the NAICS when part of a general merchandise retail use."[1]

In October 2009, Cameron Bayonne Urban Renewal and Walmart executed a lease whereby Walmart would lease approximately 90,000 square feet to "develop and erect" a "retail store" in Bayonne Crossing. Walmart could engage in "any legal retail use, including typical general merchandise and supermarket uses," although that was subject to the Declaration, which was annexed to the lease. The lease defined "floor area" as:

> . . . the actual number of square feet of space contained on any or all floors within any building in the Shopping Center as shown on Exhibit "A" for which a certificate of occupancy has been issued, measured from the exterior of outside walls or store front and/or to the centerline of any common walls. Floor Area shall not

---

[1] Subsection 445110 of the NAICS manual states in relevant part:

> **445110 Supermarkets and Other Grocery Retailers []**
>      This industry comprises establishments generally known as supermarkets and other grocery retailers (except convenience retailers) primarily engaged in retailing a general line of food, such as canned and frozen foods; fresh fruits and vegetables; and fresh and prepared meats, fish, and poultry.
>
> Off. of Mgmt. & Budget, Exec. Off. of the President, North Am. Indus. Classification Sys., 346 (2022), https://www.census.gov/naics/reference_files_tools/2022_NAICS_Manual.pdf.

A-2496-23

include any non-selling storage/office area in the mezzanine.

The "Exclusive Covenant," which as noted, we refer to as the exclusivity provision, states:

> 26. <u>EXCLUSIVE</u>
>
> Provided Lessee is open and operating as a Wal-Mart Super Center during the term of this Lease, subject to the applicable provisions of the Declaration, Lessor agrees that it has not and <u>will not enter into a lease of other space within the Shopping Center which expressly authorizes or permits as its principal use a supermarket (selling food in more than 10,000 square feet of Floor Area)</u>, wholesale club, or discount department store exceeding 35,000 square feet of Floor Area full line (except for a Kohl's) (the "**Exclusive Covenant**"). Should any occupant of the Shopping Center operate in violation of the Exclusive Covenant, in addition to any and all remedies Lessee may have at law or in equity, Lessee shall have the right to: (i) compel Lessor to bring any appropriate legal action to enjoin any occupant of the Shopping Center from violating Lessee's Exclusive Covenant, or (ii) terminate this Lease upon not less than thirty (30) days written notice to Lessor . . . .
>
> [(First emphasis added).]

The Declaration's requirements, which covered the entire redevelopment plan, were "perpetual . . . covenants running with the land." However, the Declaration specifically provided that the terms of the lease would prevail "in the event of any conflict or ambiguity between the terms, covenants, conditions

5

and provisions" of a lease and those of the Declaration.

Apart from Walmart, or any enterprise operating on the Lowe's Home Improvement premises, the Declaration prohibits:

> (a) a grocery or supermarket use selling food in more than 12,000 s.f., (b) wholesale clubs (e.g. Costco), and (c) discount full line department stores exceeding 40,000 s.f., provided that the exclusion in this sub-paragraph (xxviii) shall not preclude a Kohl's store, or such like store as may then exist

The Declaration's definition of "floor area" contained a partial exclusion for "non-selling or storage space areas" that were not on a building's main floor:

> (iv)  "**Floor Area**" shall mean the actual number of square feet of space contained on all floors within any Building (excepting non-selling mezzanine areas, but with regard to the Demised Premises of Building "J," Floor Area shall include the Floor Area contained in the mezzanine of Building "J") within the Project, as applicable, and, with respect to exterior areas, including all exterior areas leased to or exclusively used by one or more Tenants (other than loading dock areas, trash compactor areas, trash container areas, unenclosed seasonal outdoor seating areas, and temporary sales areas).  All measurements shall be from the exterior of outside walls or store front and/or to the centerline of any common walls, but in no event shall Floor Area include any non-selling or storage space areas within (1) any mezzanine (except as to Building "J"), (2) lower floor, (3) second floor or, (4) except as set forth above, any exterior areas.

6

The Declaration required waivers to be in writing, prohibiting waiver by implication or by inaction.

In 2014, KRG acquired ownership of Bayonne Crossing and Walmart's new lessor. In September 2022, KRG executed a lease with Aldi for "approximately 19,591 square feet of floor area" in the shopping center. The lease declared that all calculations of floor area were to be made "as described in the Walmart lease."

The Aldi lease provided that its permitted use was "the operation of a select assortment retail grocery store" and "any other lawful retail purpose, subject to any use restrictions encumbering the [Shopping] Center." It also related that "the Floor Area (as described in the Walmart lease) in which [Aldi] sells food shall never exceed 10,000 square feet of space," and that the "calculation of the 'Floor Area' (such term as described in the Walmart lease) of [Aldi's] Premises . . . is 9,766 square feet." The Aldi lease ostensibly granted it exclusivity as a "retail grocery store," defined as "a supermarket, a meat market, a grocery store, a fruit and vegetable store or stand, a frozen or otherwise processed food store, 'dollar stores' and any other store where more than 50 grocery items are sold for off-premises consumption."

Exhibit G of the Aldi lease expressly excluded Walmart from the

restriction against another tenant's operating "a grocery or supermarket use selling food in more than 12,000 square feet." It also acknowledged the exclusivity provision in the lease by setting forth: "<u>Exclusive Use</u>. Landlord will not lease space within the Shopping Center permitting as its principal use a supermarket (selling food in excess of 10,000sf of Floor Area), wholesale club or discount department store exceeding 35,000sf of Floor Area full line."

A month later, Walmart objected to the Aldi lease because Aldi was a grocery store which violated the exclusivity provision because the floor area leased to Aldi was greater than 10,000 square feet. Walmart emphasized that "floor area" in the lease had the same "plain meaning" provided by the Declaration, namely, that it "does not just mean 'where food items are displayed,' but also includes the areas where food is stored, and the register areas where food is sold." Walmart also invoked the Declaration's prohibition of implied waivers, noting that it "clearly and unequivocally" informed KRG that it would "never waive a food restriction." Aldi disagreed and later amended its lease in July 2023, to reflect a "concept floor plan" of 9,999 square feet for the "total food sales area": 9,435 square feet for the "regular sales" area and 564 square feet for the coolers and freezers accessible to customers. The remainder of the Aldi lease's 1,480 square feet floor space interior was designated for "Aldi Finds

non-food" area; comprising the entire center aisle with all the displays on both sides facing it.

Months before the Aldi lease was amended, KRG filed a Chancery Division complaint seeking declaratory judgment that the exclusivity provision's restriction on other tenants in Bayonne Crossing was "to be measured based on the square footage of the area in which food products are made available for purchase" there. More specifically, KRG sought a further finding that "the floor plan(s) which KRG intends to present to the [c]ourt in connection with any existing or proposed supermarket lease at the shopping center does/do not violate any applicable use restrictions."

Following discovery, KRG moved for summary judgment. Walmart cross-moved for summary judgment. At the conclusion of oral argument on March 15, 2024, the trial court granted plaintiff's motion in part and denied defendant's cross-motion. The court entered declaratory judgment that "KRG or any successor-in-interest to KRG shall be entitled to lease space at Bayonne Crossing to any tenant for the principal use as a supermarket selling food in not more than 10,000 square feet." The court's order declined "to review and approve any future leases or floor plans as requested in the prayer for relief in the [c]omplaint." A separate order was issued on the denial of defendant's cross-

9

motion for summary judgment.

KRG moved for reconsideration. In the meantime, Walmart appealed the grant of summary judgment to KRG and the denial of its cross-motion for summary judgment. KRG then cross-appealed. In response, our court remanded the matter so that the trial court could decide KRG's reconsideration motion.

On June 20, 2024, the trial court entered an order granting KRG relief. The court found that Aldi's floor plan was "compliant with the restrictive use provisions of [Walmart's] Ground Lease and the Declaration." However, it denied the motion to the extent that KRG again requested a declaration concerning the application of the exclusivity provision to future tenants or other floor plans.

Walmart subsequently amended its appeal to challenge the June 20 reconsideration order. Plaintiff withdrew its cross-appeal.

II.

Based upon our de novo review, Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014), and applying "the same standard governing the trial court," Oyola v. Liu, 431 N.J. Super. 493, 497 (App. Div. 2013), we conclude the trial court erred in: (1) granting KRG summary judgment that the Aldi lease did not violate the exclusivity provision of Walmart's lease; and (2) denying

10

Walmart's cross-motion for summary judgment that the Aldi lease violated the exclusivity provision. Our decision is governed by our interpretation of the exclusivity provision, as well as the redevelopment plan's Declaration, as guided by our contract interpretation principles.

Like our summary judgment standard, appellate review of contract interpretation is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (citation omitted). The cornerstone of contract interpretation is that "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "[U]nambiguous contracts will be enforced as written unless they are illegal or otherwise violate public policy." Leonard & Butler, P.C. v. Harris, 279 N.J. Super. 659, 671 (App. Div. 1995). The "court's task i[s] not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (internal quotations and citation omitted). "It is well-settled that [c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." In re County of

11

Atlantic, 230 N.J. 237, 254 (2017) (alteration in original) (internal quotation marks and citation omitted). "[T]he burden of establishing a breach of contract rests with the party who asserts the breach." Nolan v. Control Data Corp., 243 N.J. Super. 420, 438 (App. Div. 1990).

Walmart is correct in asserting that KRG violated the exclusivity provision by leasing space at Bayonne Crossing to Aldi to operate a supermarket since its principal use as a supermarket occupied a "building or leasehold" of more than 10,000 square feet. We agree with the trial court that there is no need to consider evidence of Walmart's intent, or extrinsic evidence such as redevelopment plan provisions. Thus, we place no emphasis on the deposition testimony of the parties' representatives who were involved negotiating Walmart's lease or Aldi's lease. We need only look at the plain meaning of the lease and the Declaration.

The exclusivity provision's plain meaning definition of the "floor area" of a competing grocery store or supermarket — which must be no more than 10,000 square feet — includes portions of the premises like storerooms that are not accessible to customers, and not just the selling space open to the public. There is no language in the lease to support the court's holding that it is "very clear" that the exclusivity provision's reference to 10,000 square feet was a limitation

A-2496-23

on how much of Aldi's premises could be used to "sell food or offer food for sale by display or otherwise" without violating the lease. The court's definition of floor area being measured solely by the size of the food displays accessible to customers, is neither stated nor implied in the lease or the Declaration. To apply this interpretation would rewrite the unambiguous terms of the lease and the Declaration, which we cannot do.

Interpreting the exclusivity provision to conclude that it is breached by the Aldi lease is consistent with the restrictive covenant's purpose, agreed to by KRG's predecessor, to prevent unwanted supermarket competition to Walmart and must be enforced. See Barr & Sons, Inc. v. Cherry Hill Ctr., Inc., 90 N.J. Super. 358, 372 (App. Div. 1966) (finding that restrictive covenant in shopping center tenant's lease prohibiting other tenants from offering particular services to be "valid as a reasonable protection" for the portion of the tenant's business so affected). The unambiguous exclusivity provision was negotiated by sophisticated parties and provides a reasonable protection of Walmart's interest without creating an absurd result.

Consequently, we reverse summary judgment to KRG and the denial of Walmart's cross-motion for summary judgment to the extent that Walmart sought to invalidate the Aldi lease as violating the exclusivity provision's 10,000

13

square foot limitation. The same reasoning that supports reversal of summary judgment to KRG applies to grant summary judgment to Walmart. The exclusivity provision does not prohibit all supermarket or grocery store uses; such use is permitted if it does not comprise more than 10,000 square feet as we have interpreted Walmart's lease and redevelopment plan's Declaration. The trial court is directed to enter an order consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2496-23